Mark A. SALES, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 08S02–0001–CR–29.

Supreme Court of Indiana.

Feb. 7, 2000.

Nicholas C. Deets, Lafayette, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Janet Brown Mallett, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

Stephen J. Johnson, Indianapolis, Indiana, Robert J. Guy, Monticello, Indiana, for Amicus Curiae Indiana Prosecuting Attorneys Council.

## ON PETITION TO TRANSFER

BOEHM, Justice.

This case deals with the interpretation of a 1997 amendment to Indiana Code § 9–30–5–1(a) which criminalized operating a vehicle "with at least ten-hundredths percent (0.10%) of alcohol by weight in grams in: ... two hundred ten (210) liters of the person's breath." We hold that prosecutions under this section, which has since been amended to eliminate any ambiguity, may proceed upon proof of operating a vehicle with .10 grams of alcohol in 210 liters of the person's breath.

### Factual and Procedural Background

On January 10, 1998, Mark Sales was stopped by police for failing to yield the right-of-way. He was later administered a breath test that showed ".14 grams of alcohol per 210 liters of breath." Sales was charged with a violation of section (2) of Indiana Code 9–30–5, "Operating a Vehicle While Intoxicated." The State later added Count II, operating a vehicle with .10 percent of alcohol in blood in violation of section 1(a)(1), and Count III, operating a vehicle with .10 percent alcohol in breath in violation of section 1(a)(2). Sales moved to suppress the results of the breath test, and the trial court denied the motion. At the same time, the trial court sua sponte dismissed Count III in a ten-page order in which it reasoned that a conviction under section 1(a)(2) required a level of alcohol intake that was so great that it was physically and medically impossible. The Court of Appeals did not find the statute to demand a lethal dose of alcohol but affirmed the dismissal of Count III on the ground that Sales' breathalyzer result produced only a .06 reading as it understood the calculation under the statute. *See Sales v. State*, 714 N.E.2d 1121, 1128 (Ind. Ct.App.1999). We granted transfer on January 18, 2000.

### The Competing Interpretations of the Statute

Indiana's first statute criminalizing the operation of a motor vehicle while intoxicated was enacted in 1939. *See* Acts 1939, c. 48, s. 52(b). Not until 1978 did the legislature attempt to provide a means of measuring intoxication. *See* Pub.L. No. 2–1978, § 927, 1978 Ind. Acts 208. That law provided that a .10% blood-alcohol content was prima facie evidence of intoxication. In 1983, operating a vehicle with that level was criminalized. *See* Pub.L. No. 143–1983, § 1, 1983 Ind. Acts 989. The 1983 statute provided: "A person who operates a vehicle with ten-hundredths percent

(.10%), or more, by weight of alcohol in his blood commits a Class C misdemeanor." This language remained essentially the same until it was amended in 1997 to read as follows:

> A person who operates a vehicle with at least ten-hundredths percent (0.10%) of alcohol by weight in grams in:
>
>> (1) one hundred (100) milliliters of the person's blood; or
>>
>> (2) two hundred ten (210) liters of the person's breath; commits a Class C misdemeanor.

Pub.L. No. 33–1997, § 7, 1997 Ind. Acts 1357 (codified as amended at Ind.Code § 9–30–5–1(a) (1998)).

The assumption underlying this provision is, as the Court of Appeals observed, that the weight of alcohol in one unit of volume (milliliters are typically used) of a person's blood is equivalent to the weight of alcohol present in 2100 units of the same person's breath. *See Sales v. State*, 714 N.E.2d 1121, 1124 n. 5 (Ind.Ct.App.1999). Before the 1997 amendment introduced breath alcohol content as a per se violation, law enforcement officials nonetheless used a machine that measured alcohol in breath, not in blood. The trial court's order quotes the following language from a Department of Toxicology[1] memorandum explaining the proposed 1997 amendment: "The proposed change amends the current blood alcohol concentration standard (percent of alcohol, by weight in grams) to include grams of alcohol per 210 liters of breath as well as grams of alcohol per 100 milliliters of blood." As the trial court observed, the intent of the 1997 amendment was to adopt the 2100:1 standard and to make clear that breath content itself was a basis for prosecution, as a majority of states had already done.

The trial court concluded that the language of the statute did not do the job and dismissed Count III, operating a vehicle

---

1. We assume this refers to the Department of Toxicology of the Indiana University School of Medicine referred to in Indiana Code § 9–30–6–5 and title 260 of the Indiana Administrative Code. The memorandum is not in the record.

"with at least ten hundredths percent (.10%) of alcohol by weight in his breath." This result was produced by the trial court's detailed calculations which concluded that in order to violate the statute the fluid in a person's veins would have to be 210% alcohol. It is obviously impossible to reach an alcohol content above 100%, and the process would produce death long before that level is reached.

The Court of Appeals also found the statute to be clear on its face but to demand a different calculation. It concluded:

> As written, to be convicted under the breath-alcohol provision a person must have .10% by weight of alcohol in grams in 210 liters of his breath. To express the weight of alcohol as a percentage of 210 liters of breath, we would divide the weight of alcohol by 210, then multiply by 100 to obtain a "percentage."

*Id.* at 1128. Application of this formula to Sales' Intoxilyzer 5000 reading of ".14 grams of alcohol per 210 liters of breath" yields .0667%,[2] which is less than the .10% necessary for a conviction under the statute.

We believe both the trial court's and the Court of Appeals' calculations reflect heroic but ultimately failed efforts to make sense of an inherently ambiguous provision. The statutory language at face value asks for a calculation of the "percent" of a number of grams (a unit of weight) found in a number of liters (a unit of volume). It is, of course, sensible to speak of the number of grams of alcohol found in a given volume of blood or breath. It is not meaningful to speak of a number of grams as a "percent" of a number of liters, at least as "percent" would be understood by one accustomed to dealing with numbers. The two are not qualitatively the same thing and neither is a portion of the other's whole. To be sure, the relationship between any two numbers may be stated as a ratio (or one as a percent of the other). But when different units of measure are attached to the two numbers, the arithmetic relationship of the numbers can become nonsensical if "percent" means what it means in ordinary usage. In simple terms, one apple is not any "percent" of two oranges as the term is commonly understood.

This is not the end of the story, however. The term "percent" is used in some circles to refer to a measure of weight in relation to volume, and not to its commonly understood mathematical meaning. We are told this derives from the usage of the term by laboratory technicians as a shorthand method of referring to the strength of a solution of a liquid or solid dissolved in a liquid. A number of courts have recognized that it is this usage to which "percent" refers in statutes dealing with blood alcohol measurement technology. *See, e.g., Rickstrew v. People,* 822 P.2d 505, 507–09 (Colo.1991); *Commonwealth v. Brooks,* 366 Mass. 423, 319 N.E.2d 901, 904–07 (1974). Thus, the "plain language" approach does not resolve this case. We are dealing with a term that has a commonly understood meaning and also a meaning derived from its application in the general area of laboratory measurement of the strength of a solution[3] and in more recent times specifically to blood alcohol content.[4]

### Resolution of This Case

Because we do not agree with the Court of Appeals that the term "per-

---

**2.** The Court of Appeals reached this result by dividing .14 (the reading) by 210 (the number of liters of breath) then multiplying by 100 (to make the result a "percent"). The trial court based its calculation on 210000 as the divisor rather than 210 because it used the number of milliliters, not the number of liters. This yields .000067% for Sales' .14 Intoxilyzer 5000 reading.

**3.** *See* L. Poindexter Watts, *Some Observations on Police–Administered Tests for Intoxication,* 45 N.C. L.Rev. 34, 50 n. 53 (1966).

**4.** *See, e.g.,* 1 Edward Louis Fiandach, *Handling Drunk Driving Cases* § 10.1 (2d ed.1995).

cent" is unambiguous in this context, we also disagree that there is a "plain, ordinary and usual meaning" of this statute without resorting to other rules of construction. *Sales,* 714 N.E.2d at 1128. A number of considerations are relevant. The goal of statutory construction is to determine, give effect to, and implement the intent of the legislature. *Collier v. Collier,* 702 N.E.2d 351, 354 (Ind.1998). The statute is examined as a whole and it is often necessary to avoid excessive reliance on a strict literal meaning or the selective reading of individual words. *See id.; see also Park 100 Dev. Co. v. Indiana Dep't of State Revenue,* 429 N.E.2d 220, 222 (Ind.1981) (legislative intent as ascertained from the statute as a whole prevails over the strict literal meaning of any word or term). The legislature is presumed to have intended the language used in the statute to be applied logically and not to bring about an unjust or absurd result. *See Riley v. State,* 711 N.E.2d 489, 495 (Ind.1999). We conventionally construe penal statutes strictly against the State, *see Smith v. State,* 675 N.E.2d 693, 697 (Ind.1996), but they are not to be read so narrowly that they exclude cases they fairly cover, *see Cape v. State,* 272 Ind. 609, 613, 400 N.E.2d 161, 164 (1980).

▇ Although the first and often the last step in any effort to interpret a piece of legislation is to examine the language of the statute, *see, e.g., Indiana Bell Telephone Co. v. Indiana Utility Regulatory Comm'n,* 715 N.E.2d 351, 354 (Ind.1999), here the statutory language is at best unclear in using a term with at least two potential meanings, and at worst unintelligible if we read "percent" as it is customarily used in general discourse. Given this ambiguity, we think it is plain which usage the General Assembly intended to adopt in its 1997 amendment. First, it seems obvious that subsections (1) and (2) of section 1(a) are intended to provide alternative means of measuring the same underlying condition. It is alcohol in the brain that is the ultimate concern, but no one urges the potentially fatal testing that would be the most reliable measurement of ascertaining brain impairment. For obvious reasons, blood and breath measures are taken as reasonable proxies. As already noted, one commonly accepted ratio of alcohol by weight in blood to alcohol by weight in the same volume of breath is 2100:1. *See generally State v. Downie,* 117 N.J. 450, 569 A.2d 242, 246–48 (1990). Indiana's statute reflects this common assumption in its reference to 210 liters of breath and 100 milliliters (1/10 of a liter) of blood. Other states have taken the same view in adopting statutes making an alcohol in breath ratio a per se violation. *See, e.g., State v. Brayman,* 110 Wash.2d 183, 751 P.2d 294, 296 (1988); *State v. McManus,* 152 Wis.2d 113, 447 N.W.2d 654, 655 (1989). Subsection 1(a)(1) plainly refers to alcohol in grams as a "percent" of "100 milliliters of blood." That subsection thus adopts the laboratory technician's use of "percent," and not the mathematician's. Because subsections (1) and (2) measure the same ultimate condition, it is at least plausible that "percent" means the same thing in both subsections.

It is also instructive that the regulations for instruments in effect at the time of Sales' arrest provided, inter alia, that the instrument was to report results "in units of percent by weight (% weight/volume) of alcohol in blood." Ind. Admin. Code tit. 260, r. 1.1–5–1(a)(1) (1996). This was adopted before volume of "breath" was added as a measure, but it reflects the same usage of "percent" to describe a ratio of weight to volume. The 0.10 "percent" test for blood-alcohol content has long been understood to mean 0.10 grams per 0.10 liters (100 milliliters) of blood. The Court of Appeals noted that some other states have statutorily defined "percent" to mean grams per 100 milliliters. *See Sales,* 714 N.E.2d at 1128. We agree that it would be more elegant had the drafters of the Indiana law included an express definition to make clear the somewhat odd usage of "percent." Nonetheless, we think it

sufficiently clear based on the usage in this industry that weight to volume is intended.

Other courts have reached the same conclusion. Confronted with similar statutory language, the Florida Court of Appeals concluded that "[a]lthough it may initially seem counter-intuitive because 'percent' has a common definition for mathematical purposes, in this context it means 'grams per 210 liters of breath.'" *State v. Brigham*, 694 So.2d 793, 793 (Fla.Dist.Ct.App. 1997). An underlying premise of *Brigham* and other cases is the notion that the term "percent" in drunk-driving statutes compares grams of alcohol to liters of breath, which are both different substances and different units of measure. *See, e.g., id.* at 799 (Appendix A) ("[G]rams as a part of liters should not be expressed as a percentage, since it is not two measurements of the same thing and it is not based upon 100 when the measurement is grams per 210 liters."); *City of Monroe v. Robinson*, 316 So.2d 119, 121 n. 1 (La.1975) ("[P]er cent by weight of alcohol in the blood" is "not truly a percentage at all because it compares weight to volume."). The State and amicus point to these and other cases in support of their contention that the term "percent" has a distinct meaning when used in the context of blood or breath testing in drunk driving statutes.

Although a claim of resort to common sense is often a mask for lack of principled rules of decision, in this case we think it appropriate. Under the trial court's calculations and rationale, a person would violate Indiana Code § 9–30–5–1(a)(2) only if his or her "alcohol blood ratio" were 210%, which would long since have produced not an impaired driver but a corpse, indeed one perhaps needing no embalming. Under the Court of Appeals' interpretation, a person would require at least .21 grams of alcohol per 210 liters of breath to violate the statute, a more than a doubling of the legal alcohol content before the 1997 amendment.

We think it plain that neither view is consistent with the purpose of the legislature in adopting the 1997 changes to the statute. In recent years the General Assembly has given serious consideration to legislation proposed by Senator Wyss that would lower the limit to .08. *See* Mary Beth Schneider, *Lawmakers Say No to Drunk–Driving Bill*, Indianapolis Star, Jan. 28, 1998, at B05. There has been no suggestion of raising, much less doubling, the long-standing .10 legal limit. In view of the other sections of the Indiana Code affected by the 1997 amendment,[5] it is clear that the legislature was merely attempting to validate the existing use of breathalyzers as a means of measuring the .10 level and to prohibit operating a vehicle with a specified level of alcohol in the breath as well as in the blood.

■ Subsequent legislation does not serve retroactively to amend legislation or declare the intent of a prior General Assembly. *See FGS Enterprises, Inc. v. Shimala*, 625 N.E.2d 1226, 1229 (Ind.1993) ("An expression of intent by a subsequent legislature as to the proper construction of a statute is of no judicial force, but in cases of doubt such construction is entitled to respectful consideration and may be given weight by the courts."). Nonetheless, it is comforting to note that in November of 1999, in an unusually expedited process, and presumably in response to the Court of Appeals' ruling, the General Assembly further amended the sentence in question to state clearly the result we find today. *See* Pub.L. No. 1–2000, § 6 ("A person who operates a vehicle with an alcohol concentration equivalent to at least ten-hundredths (0.10) gram of alcohol per: ... two hundred ten (210) liters of the person's breath; commits a Class C misdemeanor.").

■ In sum, we agree with the courts that have, notwithstanding the somewhat arcane usage of "percent," found these statutes to prohibit operating a vehicle

---

**5.** *See* Ind.Code §§ 4–31–8–4; 9–13–2–131; 9–13–2–151; 9–24–6–15; 9–30–5–4; 9–30–5–5; 9–30–5–8.5; 9–30–6–15; 9–30–8–2; 9–30–10– 4; 9–30–10–9; 9–30–15–3; 14–15–8–5; 14–15–8–6; 14–15–8–8 (Supp.1997).

with either 0.10 percent alcohol by weight in the person's blood or 0.10 grams of alcohol in 210 liters of breath. In reaching this conclusion, we believe we are implementing the legislative scheme and not substituting our judgment for that of the legislature. If we are wrong, the legislature can readily correct our error.

 Finally, we are mindful that clarity in penal statutes is a very high priority. Every citizen is entitled to know what the law prohibits before facing the weight of a criminal prosecution. Here, however, we are dealing with a statute that is universally understood and fully appreciated by all vehicle operators. Driving after consuming too much alcohol is a violation of the law, and drivers understand this means a "point one" blood content that will be measured by a "breathalyzer." This case presents no obscure regulatory crime but rather one known to one and all, and one described in the driver's manual required for licenses. *See* Bureau of Motor Vehicles, *Indiana Driver's Manual* 66 ("Driving while intoxicated or with a blood-alcohol content ('BAC') in excess of the legal limit is a criminal offense and will have an immediate and significant effect on your privilege to operate a motor vehicle."). No one reporting a .10 breathalyzer reading can fairly claim surprise at being convicted of operating a vehicle while intoxicated.

### Conclusion

The trial court's sua sponte dismissal of Count III is reversed. We summarily affirm the Court of Appeals' holding that the results of the Intoxilyzer 5000 were admissible. Ind. Appellate Rule 11(B)(3). This case is remanded to the trial court for further proceedings consistent with this opinion.

SHEPARD, C.J., and DICKSON, SULLIVAN and RUCKER, JJ., concur.