**Darnell CARTER, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 79A02–9910–CR–738.

Court of Appeals of Indiana.

Aug. 24, 2000.

Joe Keith Lewis, Marion, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Timothy W. Beam, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

VAIDIK, Judge

### Case Summary

Appellant, Darnell Carter appeals his conviction for Operating a Motor Vehicle

While Intoxicated,[1] a Class D felony. In particular, Carter contends that the trial court erroneously admitted results from a breath test because the results were hearsay, irrelevant, and did not comport with Indiana Department of Toxicology Guidelines. Carter also contends that the trial court gave a mandatory instruction invading the province of the jury with respect to endangerment and failed to give an instruction informing the jury that it did not have to accept the judicially noticed guidelines as conclusive. Because we hold that Carter's arguments with regard to the admission of his breath test were rendered moot by *Sales v. State*, 723 N.E.2d 416 (Ind.2000), the jury instructions, as a whole, properly instructed the jury, and any error in not giving a jury instruction on judicially noticed facts was harmless, we affirm. However, because the class D felony conviction enhances and therefore subsumes the class A misdemeanor conviction for operating while intoxicated, we reverse and remand to the trial court with instructions to vacate the class A misdemeanor conviction.

### Facts and Procedural History

The facts reveal that on June 27, 1998, Trooper Scott Brown stopped Carter's vehicle in Lafayette, Indiana, after Trooper Brown noticed that Carter was driving slower than the speed limit and weaving, nearly hitting parked cars. Then, Carter stopped two vehicle lengths short of an intersection, even though the stop light was green. When Trooper Brown stopped the vehicle and approached it, he observed Carter in the driver's seat and Carter's cousin in the passenger seat, and asked Carter for his license and registration. Carter found his driver's license in his wallet only after Trooper Brown pointed it out to him, and Trooper Brown had to remind him to continue to search for his vehicle registration. When Carter explained that he was driving to his cousin's house, Trooper Brown noticed an odor on

1. IND.CODE § 9–30–5–3 (Burns 1997).

Carter's breath. Also, his eyes were glassed and bloodshot, and his speech was slurred. Carter admitted he had been drinking, and Trooper Brown administered several field sobriety tests. After determining that Carter had failed the field sobriety tests, Trooper Brown asked that Carter take a chemical breath test. Carter agreed, and although the first test failed to provide an adequate sample, the second test registered .17 on the printed ticket.

The State charged Carter with operating while intoxicated,[2] a class A misdemeanor, operating a vehicle with at least ten-hundredths percent (.10%) by weight of alcohol in grams,[3] a class C misdemeanor, and operating while intoxicated with having a previous operating while intoxicated conviction within the past five years,[4] a class D felony. At trial, Carter objected to the admission of the breath test result based upon hearsay, relevancy and a failure to meet state toxicology guidelines. Carter also objected to a jury instruction which allowed the jury to find him guilty even if the evidence did not establish that he was operating in a manner other than as an ordinary prudent and cautious person.

The jury convicted Carter of operating while intoxicated as a class A misdemeanor and operating a vehicle with at least .10% of alcohol by weight in grams as a class C misdemeanor. Carter then waived a jury trial for the class D felony charge. The court found him guilty on this count and sentenced him to three years imprisonment with two and one-half years suspended.

Carter then filed a Motion to Correct Errors. The court, relying upon the new decision of *Sales v. State*, 714 N.E.2d 1121 (Ind.Ct.App.1999), vacated the conviction for operating a vehicle with at least .10% of alcohol by weight in grams. The court

affirmed the other two convictions, and this appeal ensued.

**Discussion and Decision**

*I. Admission of Breath Test*

Carter asserts the trial court erred in admitting the results of his breath test which expressed that Carter had .17 grams of alcohol in 210 liters of his breath. Specifically, Carter contends that the breath test printout was hearsay because it does not fit within the statutory exception found in IND.CODE § 9–30–6–15(a) (Burns 1997) which states that "the amount by weight of alcohol that was in the *blood* of the person ... is admissible." (emphasis supplied). Because the printout in Carter's case measured the amount of alcohol is his breath and not his blood, Carter argues that the results are inadmissible hearsay. Secondly, Carter claims that the results are irrelevant because no conversion formula was admitted which would express the results in the terms of blood alcohol concentration. Finally, Carter asserts that the trial court erred in admitting the breath test results because they did not comport with the Indiana Department of Toxicology Guidelines. The guidelines, found at 260 IND. ADMIN. CODE § 1.1–1–1 *et. seq.* (1996), require that breath testing equipment report results in terms of blood alcohol concentration by the percent in weight of alcohol in blood. 260 IND. ADMIN. CODE § 1.1–5–1.

■ Carter's contentions about the admissibility of the breath test results have recently been addressed by the Indiana Supreme Court's decision in *Sales v. State, supra*, 723 N.E.2d 416. The *Sales* decision interpreted the meaning of a 1997 amendment to IND.CODE § 9–30–5–1(a) which criminalized operating a vehicle with at least .10% of alcohol by weight in grams in a person's breath. In 1997, the statute, which before discussed only a measure of

---

2. IND.CODE 9–30–5–2 (Burns 1997).

3. IND.CODE 9–30–5–1 (Burns 1997 & Supp. 2000).

4. IND.CODE 9–30–5–3 (Burns 1997).

alcohol in a person's blood, was amended to read:

(a) A person who operates a vehicle with at least ten-hundredths percent (.10%) of alcohol by weight in grams in:

(1) one hundred (100) milliliters of the person's blood; or

(2) two hundred ten (210) liters of the person's breath; commits a Class C misdemeanor.

Pub.L. No. 33–1997 § 7. Although this amendment was the first reflection that a particular level of alcohol in one's breath was a per se violation, law enforcement officials had been using a machine which measured alcohol in breath prior to the amendment. *Sales,* 723 N.E.2d at 418. Therefore, this amendment was intended as an affirmation that breath content could be the basis of prosecution. *Id.*

After the legislature amended this provision, a debate quickly arose about how its exact language should be interpreted. For example, the trial court in *Sales* held that the amendment did not reach its goal of allowing prosecutions based upon alcohol readings in a person's breath alone. *Id.* The trial court found that a conviction for operating a vehicle with at least .10% of alcohol by weight in grams in 210 liters of a person's breath based upon a reading of .14 grams could not stand. *Id.* In fact, after long calculations, the trial court concluded that in order to violate the statute, "the fluid in a person's veins would have to be 210% alcohol." *Id.* at 419.

A panel of this court, on appeal, also concluded that the conviction in *Sales* could not be affirmed, although we disagreed with the trial court's interpretation of the statute. *See Sales v. State,* 714 N.E.2d 1121 (Ind.Ct.App.1999), *aff'd on reh'g by* 715 N.E.2d 1009 (Ind.Ct.App. 1999). While we held that on its face, the statute was clear, after engaging in a formula to convert the .14 grams of alcohol into a percentage, we concluded that .14 grams of alcohol per 210 liters of breath would yield only .0667% which is less than the .10% required for conviction. *Id.* at 1128.

On transfer, the Indiana Supreme Court noted that both efforts of the trial court and of our court failed "to make sense of an inherently ambiguous provision." *Sales, supra,* 723 N.E.2d at 419. The court identified that the confusion with the amendment arose because the provision "asks for a calculation of the 'percent' of a number of grams (a unit of weight) found in a number of liters (a unit of volume)." *Id.* The court noted that it is not meaningful to measure what percent a unit of weight is of a unit of volume. The court stated, "one apple is not any 'percent' of two oranges as the term is commonly understood." *Id.* However, the court also gave credit to a more technical interpretation of the word "percent" which laboratory technicians use as a "shorthand method of referring to the strength of a solution . . . ." *Id.*

Noting that more than one interpretation of Ind.Code § 9–30–5–1(a) exists, the court concluded that the use of the word "percent" in the statute was ambiguous. Therefore, the court read the provision to give effect to the intent of the legislature in adopting this provision. *Id.* at 420. The court examined the statute as a whole and concluded that the legislature intended to provide alternative measurements for the same condition. *Id.* Recognizing that the legislature should have defined the meaning of "percent", the court resorted to common sense to hold that the legislature intended to compare the amount of grams of alcohol in 210 liters of breath without the use of a percentage. *Id.* at 420–21. The court reasoned that the legislature was trying to validate the use of breath tests in prosecutions and not change the amount of alcohol in blood or breath required to prosecute. *Id.* at 421.

■ Here, Carter claims that the breath results are hearsay. Breath test printouts are hearsay. *Mullins v. State,* 646 N.E.2d 40, 48 (Ind.1995); *Storrjohann v. State,* 651 N.E.2d 294, 295 (Ind.Ct.App.1995). It

is well-settled, however, that evidence of blood alcohol content is admissible under a statutory exception. *See* IND.CODE § 9–30–6–15 (Burns 1997 & Supp.2000).

■ Yet, Carter asserts this hearsay exception does not apply to measurements based upon alcohol in a person's breath. We disagree. The *Sales* decision stands for the proposition that regardless of the imperfections in the language of IND.CODE § 9–30–5–1(a), the legislature was trying to validate the use of breath tests in prosecutions. *Id.* Although the hearsay exception in IND.CODE § 9–30–6–15 stated at the time that "the amount by weight of alcohol that was in the blood of the person charged with the offense ... is admissible," the *Sales* decision clearly holds that a measurement in breath is equally acceptable without any conversion to a measurement in blood. Further, IND.CODE § 9–30–6–15 provided that analysis of the person's breath is an acceptable method for measuring the amount of alcohol in a person's blood. The breath test results, therefore, fall within the hearsay exception.

Carter's arguments that the breath test results are irrelevant and fail to conform with state toxicology guidelines also fail. Both of these contentions focus upon the State's failure to introduce evidence converting the breath measurement to blood alcohol content in order to better track the exact language of the statute and the toxicology regulations. Again, the *Sales* decision concluded that the legislature's intent in adopting IND.CODE § 9–30–5–1(a) was to validate breath test results as an alternative measure of intoxication without requiring other evidence proving blood alcohol content. Further, the Indiana Supreme Court was correct in its conclusions, as the legislature later amended the statute to reflect that it intended to make the breath test result an equal and alternative measure to blood alcohol content. *See* Pub.L.No.1–2000, § 6. Thus, we conclude that the trial court did not error in admitting Carter's breath test results.

## II. Jury Instructions

■ Carter next claims that the trial court impinged on the jury's duty to decide the law and the facts of the case when it instructed the jury over his objection that it could find him guilty even if the evidence did not establish that he was operating in a manner other than as an ordinary prudent and cautious person. Specifically, the instruction reads as follows:

> If you find from the evidence, beyond a reasonable doubt, that the defendant was operating a vehicle and was intoxicated at the time he was operating the vehicle, you may find the defendant guilty as charged even though the evidence does not show the defendant operated the vehicle in a manner other than as would an ordinary prudent and cautious person.
> The endangerment portion of the statutory definition of 'intoxicated' does not require that the State prove that any person other than the defendant was actually in the path of the defendant's vehicle or in the same area; endangerment can be established by showing that the defendant's condition or driving manner could have endangered another person, so proof that the defendant's condition renders driving unsafe is sufficient to establish endangerment and endangerment applies to any person, including the public, police and defendant, regardless of proximity.

Record at 77. Carter asserts that this was a mandatory instruction because it told the jury to ignore the evidence which showed that Carter's performance was not impaired.

■ "A mandatory instruction is one which 'attempt[s] to set up a factual situation directing the jury to a certain result.'" *Neuhoff v. State,* 708 N.E.2d 889, 892 (Ind.Ct.App.1999) (quoting *Ajabu v. State,* 677 N.E.2d 1035, 1039 n. 3 (Ind.Ct. App.1997), *trans. denied* ). Article 1, section 19 of the Indiana Constitution provides "[i]n all criminal cases whatever, the jury shall have the right to determine the

law and the facts." In *Pritchard v. State*, 248 Ind. 566, 230 N.E.2d 416 (Ind.1967), the Indiana Supreme Court interpreted Article 1, section 19 to forbid a trial court from invading this constitutional province of the jury by giving an instruction which binds the conscience of the jury to return a guilty verdict if it finds certain facts.

■ In the instant case, the jury instruction told the jury that it "may find the defendant guilty." Record at 77. The use of the word "may" maintains some level of discretion from which the jury is permitted to decide the facts and the law of the case. Additionally, "[j]ury instructions are not to be considered in isolation but as a whole and in reference to each other." *Hollowell v. State*, 707 N.E.2d 1014, 1023 (Ind.Ct. App.1999). Here, the trial court also gave Indiana Pattern Jury Instruction 1.03 which stresses that the jury was the judge of both the law and the facts in the case. While we agree that the instruction on endangerment should have been worded more clearly to reiterate the constitutional province of the jury, we conclude that as a whole, the instructions properly advised the jury.

■ Carter finally asserts that the trial court erred in failing to instruct the jury that although the trial court took judicial notice of the Indiana Department of Toxicology Guidelines, it was not required to accept those facts as conclusive. This jury instruction which tells the jury that it may, but is not required, to accept any judicially noticed fact as conclusive is derived from Indiana Evidence Rule 201(g).

■ The trial court in this case took judicial notice of certain regulations and failed to give an instruction pursuant to Indiana Evidence Rule 201(g). Carter, however, failed to request this instruction and did not object to the trial court's failure to give the instruction. "A party cannot complain of incomplete or omitted instructions when he failed to tender any instruction on the point of law." *Mitchell v. State*, 712 N.E.2d 1050, 1054 (Ind.Ct.

App.1999). Thus, Carter waived the issue. But, Carter contends that the failure to give the instruction resulted in fundamental error. Carter argues that the court's failure to instruct the jury that it did not have to accept the toxicology guidelines as conclusive confused the jury. The jury's confusion over whether the formula from the guidelines should be used was displayed by its asking questions about whether the breath test results were measured in grams or in a percentage. Carter challenges that this confusion denied him a fair trial. Because the *Sales* decision held that results could be reported in a breath or blood test and we have held that the breath test results in this case were admissible, any confusion experienced by the jury regarding the particular formulas employed was harmless.

■ As a final point, although not raised by the appellant, we conclude *sua sponte* that both the operating while intoxicated conviction as a class A misdemeanor and the operating while intoxicated conviction with having a previous operating while intoxicated conviction within the past five years as a class D felony may not stand. The class A misdemeanor conviction is subsumed by the enhanced class D felony conviction.

Judgment affirmed in part and reversed in part and remanded to the trial court with instructions to vacate the class A misdemeanor conviction.

SULLIVAN, J., and BAILEY, J., concur.