FILED

Oct 31 2017, 10:05 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANTS

Stephen R. Buschmann
Thrasher Buschmann & Voelkel, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Douglas C. Haney
City of Carmel
Carmel, Indiana

Bryan H. Babb
Stephen C. Unger
Bose McKinney & Evans LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Certain Home Place Annexation Territory Landowners, | October 31, 2017 |
| *Appellants-Petitioners*, | Court of Appeals Case No. 29A05-1606-MI-1291 |
| v. | Appeal from the Hamilton Superior Court |
| City of Carmel, Indiana, | The Honorable Matthew C. Kincaid, Special Judge |
| *Appellee-Respondent*. | Trial Court Cause No. 29D03-0502-MI-169 |

**Brown, Judge.**

[1] In 2005, Certain Home Place Annexation Territory Landowners ("Landowners") successfully challenged an annexation attempt by the City of Carmel ("Carmel"). We reversed the trial court's decision. *City of Carmel v. Certain Home Place Annexation Territory Landowners*, 874 N.E.2d 1045, 1046 (Ind. Ct. App. 2007), *trans. denied*. The case was remanded for a determination as to whether Landowners carried their burden of proof under Indiana Code § 36-4-3-13(e) (2004), which affords a separate avenue to challenge annexations. The trial court ruled in favor of Carmel, concluding that Landowners failed to prove that fire protection was adequately furnished by a provider other than Carmel. On appeal, Landowners raise one issue, and Carmel raises several cross-appeal issues. We find Landowners' issue dispositive, that is: whether Landowners failed to prove that fire protection was being adequately furnished by a provider other than Carmel. We affirm.

## Facts and Procedural History

[2] Carmel is located in Clay Township, Hamilton County. Home Place, the area sought to be annexed by Carmel, is located adjacent to Carmel in unincorporated Clay Township. The general boundaries of Home Place are 99th Street to the south, Pennsylvania Street to the west, 111th Street to the north, and Westfield Boulevard to the east. On July 2, 2004, the Common Council of the City of Carmel ("Council") introduced Ordinance No. C-264 for the purpose of annexing Home Place. On November 15, 2004, the Council unanimously passed the ordinance.

[3] On February 18, 2005, the Landowners filed a petition for remonstrance against the annexation. A hearing was held on July 7 and 8, 2005. On October 4, 2005, the trial court issued findings of fact and conclusions of law granting the remonstrance on grounds the City failed to adequately establish the method of financing the planned services that were to be provided to Home Place after annexation. *See* Ind. Code § 36-4-3-13(d)(2). Carmel appealed. On October 17, 2007, we reversed the trial court's decision, concluding that "Carmel met its burden of proving the statutory prerequisite that the fiscal plan must show '[t]he method or methods of financing the planned services.'" *City of Carmel*, 874 N.E.2d at 1046.

[4] The matter was remanded to the trial court to determine whether Landowners carried their burden of proof as to Indiana Code § 36-4-3-13(e), which provides grounds by which remonstrators can prevail in preventing annexation. On remand, the parties twice agreed to hold the matter in abeyance for periods totaling six years. Following a change of judge, expiration of the agreed abeyance periods, and an attorney's conference, the trial court set a procedural schedule for briefing and for arguments. The trial court held a hearing on the matter on May 9, 2016. It did not entertain new evidence but instead reviewed the matter based on a paper record of the original evidence. On May 17, 2016, it issued findings of fact and conclusions of law upholding annexation. The court determined that under Indiana Code § 36-4-3-13(e)(2)(A)(i), Landowners failed to establish that fire protection was adequately furnished by a provider other

than the municipality seeking annexation, that is, Carmel. Landowners now appeal.

## *Discussion*

When, as here, the trial court enters findings of fact and conclusions of law, "we review issues of fact for sufficiency of the evidence and look to the record only for evidence favorable to the judgment." *City of Fort Wayne v. Certain Southwest Annexation Area Landowners*, 764 N.E.2d 221, 224 (Ind. 2002). We set aside findings and judgments only when they are clearly erroneous. *Id*. As always, we review questions of law de novo. *Id*.

Annexation is subject to judicial review only so far as the General Assembly has authorized it by statute, and the larger object of the annexation statute is, as it has always been, to permit annexation of adjacent urban territory. *City of Carmel v. Certain Southwest Clay Tp. Annexation Territory Landowners*, 868 N.E.2d 793, 797 (Ind. 2007) (quotation omitted). Annexation "is essentially a legislative function." *City of Fort Wayne*, 764 N.E.2d at 224. Therefore, courts play only a limited role in annexations and must afford the municipality's legislative judgment substantial deference. *Id*.

Indiana Code § 36-4-3-13 lists the prerequisites for annexation, and the municipality bears the burden of showing that it has complied with these statutory conditions. *City of Carmel*, 868 N.E.2d at 797-798. If the municipality

meets the requirements of Subsections 13(b)[1] or 13(c)[2] and Subsection 13(d)[3],

the court must order the annexation to proceed, subject to the remonstrators'

---

[1] Indiana Code § 36-4-3-13(b) provides as follows:

The requirements of this subsection are met if the evidence establishes the following:

(1) That the territory sought to be annexed is contiguous to the municipality.

(2) One (1) of the following:

(A) The resident population density of the territory sought to be annexed is at least three (3) persons per acre.

(B) Sixty percent (60%) of the territory is subdivided.

(C) The territory is zoned for commercial, business, or industrial uses.

[2] Indiana Code § 36-4-3-13(c) provides as follows:

The requirements of this subsection are met if the evidence establishes the following:

(1) That the territory sought to be annexed is contiguous to the municipality as required by section 1.5 of this chapter, except that at least one-fourth (¼), instead of one-eighth (⅛), of the aggregate external boundaries of the territory sought to be annexed must coincide with the boundaries of the municipality.

(2) That the territory sought to be annexed is needed and can be used by the municipality for its development in the reasonably near future.

[3] Indiana Code § 36-4-3-13(d) provides as follows:

The requirements of this subsection are met if the evidence establishes that the municipality has developed and adopted a written fiscal plan and has established a definite policy, by resolution of the legislative body as set forth in section 3.1 of this chapter. The fiscal plan must show the following:

(1) The cost estimates of planned services to be furnished to the territory to be annexed. The plan must present itemized estimated costs for each municipal department or agency.

(2) The method or methods of financing the planned services. The plan must explain how specific and detailed expenses will be funded and must indicate the taxes, grants, and other funding to be used.

(3) The plan for the organization and extension of services. The plan must detail the specific services that will be provided and the dates the services will begin.

(4) That planned services of a noncapital nature, including police protection, fire protection, street and road maintenance, and other noncapital services normally provided within the corporate boundaries, will be provided to the annexed territory within one (1) year after the effective date of annexation and that they will be provided in a manner equivalent in standard and scope to those noncapital services provided to areas within the corporate boundaries regardless of similar topography, patterns of land use, and population density.

(5) That services of a capital improvement nature, including street construction, street lighting, sewer facilities, water facilities, and stormwater drainage facilities, will be provided to the annexed territory within three (3) years after the effective date of the annexation in the same manner as those services are provided to areas within the corporate boundaries,

ability to establish all of the grounds listed in Subsection 13(e). *Id*. However, Subsection 13(e)(2) provides grounds by which remonstrators can prevail in preventing annexation, that is, by establishing all of the elements listed in the subsection. The subsection specifically provides that the trial court must order a proposed annexation not to take place if all of the conditions set forth in clauses (A) through (D) exist in the territory proposed to be annexed. The subsection reads as follows:

(e) At the hearing under section 12 of this chapter, the court shall do the following:

* * * * *

(2) Order a proposed annexation not to take place if the court finds that all of the following conditions exist in the territory proposed to be annexed:

(A) *The following services are adequately furnished by a provider other than the municipality seeking the annexation*:

(i) Police and *fire protection*.

(ii) Street and road maintenance.

---

regardless of similar topography, patterns of land use, and population density, and in a manner consistent with federal, state, and local laws, procedures, and planning criteria.

(B) The annexation will have a significant financial
impact on the residents or owners of land.

(C) The annexation is not in the best interests of the
owners of land in the territory proposed to be
annexed as set forth in subsection (f).

(D) One (1) of the following opposes the annexation:

(i) At least sixty-five percent (65%) of the owners
of land in the territory proposed to be
annexed.

(ii) The owners of more than seventy-five percent
(75%) in assessed valuation of the land in the
territory proposed to be annexed.

Ind. Code § 36-4-3-13(e)(2) (emphases added).

[8] The issue is whether the trial court erred in determining that Landowners failed
to establish that their fire protection was adequately furnished by a provider
other than Carmel. Landowners further maintain that in making the alleged
erroneous determination, the trial court also incorrectly established a new
standard of review when it concluded that a determination under Subsection
13(e)(2)(A)(i) "call[ed] for a straight-forward factual analysis of who is doing
most of the fire fighting and protecting in Home Place." Appellants' Appendix
Volume 2 at 18. Landowners argue that instead of applying a "straight-forward
factual analysis," the trial court should have made its determination by
examining applicable statutes.

[9]     According to Landowners, under Indiana Code §§ 36-8-13-2 (1981) (fire

protection) and 36-8-13-3 (2004) (authorized methods of providing fire

protection), Clay Township is the "provider" of fire protection in Home Place as

contemplated by Indiana Code § 36-4-3-13(e)(2)(A)(i).  Per Indiana Code § 36-8-

13-2, a township, under certain circumstances, is required to provide for fire

protection.  The code section states as follows:

> If a majority of the owners of taxable real property residing
> within and owning real property within that part of a township
> located outside the corporate boundaries of a municipality
> petition the township executive and legislative body to provide
> fire protection in that part of the township, the executive and
> legislative body shall grant the petition and proceed without
> delay to provide for fire protection.  The executive and legislative
> body shall determine which of the methods in section 3 of this
> chapter for providing fire protection in townships will be
> followed.

Ind. Code § 36-8-13-2.  Indiana Code § 36-8-13-3 lists the different ways a

township can satisfy its responsibility with respect to fire protection, for

example by providing the service with its own equipment and personnel,

contracting with a volunteer fire department to provide the service, or

contracting with a municipality to provide fire protection or emergency service.

The statute reads in relevant part:

> (a) The executive of a township, with the approval of the legislative
>     body, may do the following:
>
> (1) Purchase firefighting and emergency services apparatus and
>     equipment for the township, provide for the housing, care,

maintenance, operation, and use of the apparatus and equipment to provide services within the township but outside the corporate boundaries of municipalities, and employ full-time or part-time personnel to operate the apparatus and equipment and to provide services in that area. . . .

(2) Contract with a municipality in the township or in a contiguous township that maintains adequate firefighting or emergency services apparatus and equipment to provide fire protection or emergency services for the township in accordance with IC 36-1-7.

(3) Cooperate with a municipality in the township or in a contiguous township in the purchase, maintenance, and upkeep of firefighting or emergency services apparatus and equipment for use in the municipality and township in accordance with IC 36-1-7.

(4) Contract with a volunteer fire department that has been organized to fight fires in the township for the use and operation of firefighting apparatus and equipment that has been purchased by the township in order to save the private and public property of the township from destruction by fire, including use of the apparatus and equipment in an adjoining township by the department if the department has made a contract with the executive of the adjoining township for the furnishing of firefighting service within the township.

(5) Contract with a volunteer fire department that maintains adequate firefighting service in accordance with IC 36-8-12.

I.C. § 36-8-13-3.

[10] Landowners read these statutes to support their proposition that Clay Township is the provider of fire protection in Home Place. According to Landowners, as long as Clay Township complies with Indiana Code § 36-8-13-3, "it remains, as a matter of law, the provider of fire protection in Home Place. . . . Thus, as a matter of law, fire protection is being furnished to Home Place by a provider other than Carmel, to wit: by Clay Township." Appellants' Brief at 9, 11.

[11] In determining that Landowners failed to establish that fire protection services were adequately furnished by a provider other than Carmel, the trial court examined, among others, the following Indiana Code Sections: 36-8-2-13 (1980) ("[a] municipality may exercise powers granted by sections 4, 5, and 6 of this chapter in areas within four (4) miles outside its corporate boundaries"); 36-8-13 (township fire protection and emergency services); 36-8-19 (addressing fire protection territories); 36-8-13-2 (addressing circumstances under which a municipality is required to provide fire protection); 36-8-13-3 (listing different ways a township can satisfy its fire-protection responsibility); 22-12-1-18.7 (1999) (defining "qualified entity," for purposes of fire safety code enforcement, as "the *executive of a township providing fire protection* under IC 36-8-13-3(a)(1) [where the township provides the service with its own equipment and personnel]; or . . . a *municipality providing fire protection* to a township under IC 36-8-13-3(a)(2) or IC 36-8-13-3(a)(3) [where the township contracts with a municipality to provide fire

protection]" (emphases added); and 6-1.1-18.5-13(10) (2004)[4] (addressing a township's authority to appeal and allowing a township to increase its levy "to pay a fair and reasonable amount under the contract with the municipality that is *furnishing* the fire protection" (emphasis added). Appellants' Appendix Volume 2 at 19-20. The trial court ultimately found that "[Indiana Code § 36-4-3-13(e)(2)(A)(i)] asks who is furnishing the [fire-protection] services – not who may be a 'provider.'" *Id*. at 19. We agree.

[12] When courts set out to construe a statute, the goal is to determine and give effect to the intent of the legislature. *Sales v. State*, 723 N.E.2d 416, 420 (Ind. 2000). The first place courts look for evidence is the language of the statute itself, and courts strive to give the words their plain and ordinary meaning. *Prewitt v. State*, 878 N.E.2d 184, 186 (Ind. 2007); *Sales*, 723 N.E.2d at 420. We examine the statute as a whole and try to avoid excessive reliance on a strict literal meaning or the selective reading of individual words. *Id*. We presume the legislature intended the language used in the statute to be applied logically, consistent with the statute's underlying policy and goals, and not in a manner that would bring about an unjust or absurd result. *Id*.

[13] Indiana Code § 36-4-3-13(e), in relevant part, directs "a proposed annexation not to take place if the court finds that . . . [t]he following services are adequately furnished by a provider other than the municipality seeking the annexation: . . .

---

[4] Effective April 20, 2017, P.L. 85-2017, Sec. 16 corrected and amended Indiana Code § 6-1.1-18.5-13. Subsection (10), among other subsections, was removed.

fire protection." While the statute does not define the word "furnish" or the word "provider," according to Black's Law Dictionary, the word "furnish" means "to supply, provide, or equip, for accomplishment of a particular purpose." BLACK'S LAW DICTIONARY 675 (6th ed. 1990). The American Heritage College Dictionary defines "furnish" as "[t]o supply; give[,]" and defines "provider" as "[o]ne that makes something available." THE AMERICAN HERITAGE COLLEGE DICTIONARY 552, 1102 (3rd ed. 2000). We detect no apparent intent by the Indiana General Assembly to stray from the plain and common meaning of the words "furnish" and "provider" within the language and context of the statute. Thus, we apply the plain and common meaning of the words within their reasonable contexts. With the definitions in mind, we construe Indiana Code § 36-4-3-13(e) to mean the following: a proposed annexation is not to take place if, among other things, the court finds that fire protection services are adequately *supplied* by *one that makes the services available* other than the municipality seeking the annexation.[5]

[14] Carmel and Clay Township signed a contract whereby Carmel agreed to "furnish fire protection service to the residents of the Township outside the limits of [Carmel] . . . ." Appellants' Appendix Volume 2 at 42. Clay Township agreed to "leave all of its fire fighting [sic] equipment, trucks and accessories . . . at the disposal of [Carmel]" throughout the term of the contract.

---

[5] Although the words "furnish" and "provide" sometimes are used as synonymous terms, we presume the Indiana General Assembly meant the derivatives of the words, as used in Indiana Code § 36-4-3-13(e), to have different meanings.

*Id.* at 43. Carmel provided all of the fire department personnel and agreed to maintain a minimum of one hundred forty-four full-time firefighters, including a paid fire chief. The fire chief was to be appointed by the mayor of Carmel after consultation with Clay Township's trustee and board. Carmel agreed to purchase "all materials and supplies, to pay all compensation to personnel and firemen, pay the costs of operation of the Fire Department and the Communication Center, to carry all necessary insurance on firefighters/personnel and on all buildings and equipment of [Carmel and the] Township, except the [fire station owned by the Township that is located in Home Place] . . . ." *Id.* at 44. Carmel owned twenty-nine of the thirty-four vehicles in the firefighting fleet.

[15] The township did not take an active role in the administration of the fire-protection services. Other than the five vehicles that it owned that were a part of the fire department's fleet, and the money it paid for the fire-protection services, the township did not contribute any other resources to the fire department, such as personnel, training, or additional equipment. Therefore, we find that under Indiana Code § 36-4-3-13(e), Carmel was the "provider" that "furnished" fire-protection services to Home Place. The trial court did not err in using a straight-forward factual analysis in making its determination, and it correctly found that Landowners failed to prove that fire protection was being adequately furnished by a provider other than Carmel.

[16] Landowners also argue that the trial court's "ignore[ed] the significant financial contribution made by the Township [toward the fire protection], without which

the [fire-protection] services could not have been provided." Appellants' Brief at 7. Specifically, according to Landowners, the trial court's "straight-forward factual analysis of who is doing most of the firefighting and protecting in Home Place" failed to consider a number of factors, such as, the fire station located in Home Place is owned by the township; the township owns one-half of a fire station located on 106th Street and is part-owner of two other stations located in the township; the township owns five of the most expensive vehicles in the firefighting fleet; and, the township contributed several million dollars in 2004 and 2005 for the fire-protection services. We disagree.

[17] In determining that Landowners failed to establish that fire-protection services are adequately furnished by a provider other than Carmel, the trial court found that Clay Township did not have a fire department and did not employ any firefighters; that Carmel furnished fire protection in Home Place through a yearly contract with Clay Township; that in exchange for the protection, Clay Township paid Carmel a share of its fire budget based upon the proportionate assessed value in the unincorporated areas of the township, but that those payments did not include a share of many of the administrative costs of running the fire department such as labor, personnel issues, overhead, legal matters, purchasing, payroll, and discipline; and that even though the township had one of six fire stations and one-seventh of the firefighting fleet titled in its name, this did not constitute "'adequate' fire protection by a provider other than Carmel" because "it is a Carmel firefighter that responds [to the emergency] relying on mostly Carmel equipment, apparatus, buildings, and administration."

Appellants' Appendix Volume 2 at 19. We find that the trial court considered all of the factors before it when it made its determination. No error occurred here.

## *Conclusion*

[18] Landowners failed to prove that fire protection is being adequately furnished by a provider other than Carmel. The judgment of the trial court is affirmed.

[19] Affirmed.

May, J., and Pyle, J., concur.