# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**JOEL C. WIENEKE**
Wieneke Law Office, LLC
Greencastle, Indiana

ATTORNEYS FOR APPELLEES:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| A.M., | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 67A01-1205-JV-211 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE PUTNAM CIRCUIT COURT
The Honorable Matthew L. Headley, Judge
Cause No. 67C01-1201-JD-7

**November 20, 2012**

**OPINION – FOR PUBLICATION**

**BAKER, Judge**

A.M., a minor, was found in possession of a pipe at school that he told school officials that he had used to smoke "spice." After confiscating the pipe and having A.M. provide a written statement, the school reported A.M. to the local police. Thereafter, the State filed a petition alleging that A.M. was a delinquent child because he had possessed a pipe with the intent to smoke marijuana from it.

A.M. appeals from the juvenile court's order adjudicating him as a delinquent child for Possession of Paraphernalia,[1] an offense that would have been a class A misdemeanor if committed by an adult. Specifically, A.M. contends that there was insufficient evidence supporting the adjudication because the State failed to prove beyond a reasonable doubt that he intended to use the pipe to introduce a controlled substance, namely marijuana, into his body. Concluding that the State failed to present sufficient evidence, we reverse the judgment of the juvenile court.

## FACTS

On January 11, 2012, Assistant Principal Richard Scott Weltz of Greencastle Middle School learned that one of A.M.'s classmates had observed a pipe sticking out of A.M.'s pants pocket. After learning this, Weltz called A.M. out of the classroom and escorted him to the assistant principal's office, where Principal Tamera Walker joined them. Weltz and Walker told A.M. that they "were aware that there could be a situation where he was in possession of something that should not be brought to school and that

---

[1] Ind. Code § 35-48-4-8.3.

[they] were interested in knowing more about that." Tr. p. 22. Without saying anything, A.M. retrieved a pipe from his sock and laid it on Weltz's desk.

After seeing the pipe, Weltz and Walker asked A.M. where he had acquired the pipe and why he had brought it to school. A.M. answered these questions. The school officials also asked if A.M. had any other prohibited items at school. A.M. emptied his pants pockets, turned them inside out, and pulled up his pants legs, indicating he had no further contraband in his pockets or his socks.

In addition to questioning A.M., Weltz and Walker "had [A.M.] write out a statement that explained having the pipe at school and why he came about bringing it to school." Id. at 23. This statement read:

> I got in trobel [sic] today because I had a pipe on me and what a pipe is is . . . smothing [sic] were [sic] you smoke drug's [sic] out of it. The last thing I smoked out of it was spice[.] Spice is like weed but it has different flavor than weed and spice can kill you aloot [sic] faster than weed can. The pipe I have I got it from my cousin [A.J.] and I gave him mine[.] I got my pipe from someone named [J.Y.] like 3 or 4 mount's [sic] ago.

Petitioner's Ex. 1.

After A.M. provided this statement, Weltz notified the Greencastle Police Department. Greencastle Middle School has a policy of always notifying the police when it discovers evidence of drug use or paraphernalia within the school. When Officer Jeff Modlin arrived, he went directly to Weltz's office. Weltz apprised Officer Modlin that A.M. had brought a pipe to school, and Officer Modlin asked to speak to A.M.'s mother.

3

Assistant Principal Weltz called A.M.'s mother, and Officer Modlin informed her of the situation and obtained her consent to speak to A.M. During this conversation, A.M.'s mother was never permitted to speak directly to A.M. nor was she asked whether she would want to speak to A.M. After hanging up with A.M.'s mother, Officer Modlin asked A.M. whether the pipe that he had been handed by the school officials was the pipe that A.M. had placed on Weltz's desk. A.M. stated that it was.

The State filed a petition alleging that A.M. was a delinquent child. More particularly, the petition alleged that A.M. was a delinquent child because:

> On or about January 11, 2012, in Putnam County, Indiana, [A.M.] did knowingly or intentionally possess a raw material, instrument, device, or object, to-wit: marijuana pipe; that the defendant intended to use for introducing into the defendant's body of a controlled substance, to-wit: marijuana, contrary to the form and statue [sic] in such case made and provided, the offense being Possession of Paraphernalia, I.C. 35-48-4-8.3(a)(3), an offense which would be . . . a Class A Misdemeanor if committed by an adult.

Appellant's App. p. 7.[2]

A.M. moved to suppress all of his statements made on January 11, 2012, because the school did not call his mother until after he had already produced the pipe, made statements about the pipe, and given his written statement, and because Officer Modlin

---

[2] Although the petition specifically referenced subsection (a)(3) of Indiana Code section 35-48-4-8.3, which prohibits the possession of paraphernalia intended to enhance the effects of a controlled substance, the text of this delinquency charge alleges that A.M. intended to use the pipe to introduce a controlled substance into his body, which is prohibited under subsection (a)(1) of the same statute. In the underlying proceedings, the court advised A.M. that it was alleged that he intended to use the pipe to introduce marijuana into his body, not to enhance the effects of marijuana. Because the parties do not address this discrepancy in their briefs, and more importantly, because we find the evidence to be insufficient to support the juvenile court's judgment under either subsection, we decline to address the issue sua sponte.

4

questioned him without providing his mother with an opportunity to speak with him. On April 9, 2012, the trial court heard evidence on this motion. The assistant principal testified that it would not have been an inconvenience to call A.M.'s mother at work before questioning A.M. about the pipe, and when he did call her at work, there was only a short delay before he spoke to her.

Also during this hearing, Officer Modlin testified that his professional opinion was that the pipe had been used for smoking marijuana and nothing else. He acknowledged that the pipe could be used for smoking other substances as well, such as "spice," which Officer Modlin testified was another name for "synthetic marijuana." Tr. p. 33. Officer Modlin further testified that he detected marijuana residue in the pipe when he first handled it, and he believed the residue was that of marijuana because it had the "odor of" marijuana. Id. at 34. However, on cross-examination, Officer Modlin admitted that the odors of burnt marijuana and burnt "spice" are "pretty close to the same thing." Id. at 35. When pressed further about his ability to distinguish between the two odors, Officer Modlin stated, "There's probably not going to be much difference at all. You would have to look at the chemical makeup between the two." Id. at 36. He stated that to decisively determine whether the residue was that of marijuana or "spice," "that's going to have to be something that a laboratory is going to have to come back on." Id. In conclusion, Officer Modlin testified that "it smelled more like marijuana" to him, but he admitted he "could be wrong." Id.

The juvenile court suppressed the statement A.M. made to Officer Modlin but denied A.M.'s motion to suppress his oral statements to the school officials as well as his written statement. The juvenile court then moved directly to the fact-finding hearing, incorporating the testimony heard and the exhibits presented during the suppression hearing into the record. Additional testimony was heard from A.M.'s mother, and at the conclusion of the evidence, the juvenile court found that the State had met its burden on its petition alleging delinquency possession of paraphernalia.

## DISCUSSION AND DECISION

A.M.'s sole contention on appeal is that the evidence presented by the State was insufficient to support his adjudication as a delinquent child. More particularly, A.M. asserts that Officer Modlin's testimony was inadequate to prove that he intended to use the pipe to smoke marijuana. Additionally, A.M. claims that because the State failed to introduce any evidence that "spice" was a controlled substance, the State's evidence was also insufficient to prove that A.M.'s adjudication as a delinquent child was proper on the basis that he intended to use the pipe to smoke "spice." Appellant's Br. p. 5-6.

In resolving a claim that the evidence supporting an adjudication of juvenile delinquency is insufficient, we apply the standard of review that applies to all sufficiency matters. Johnson v. State, 719 N.E.2d 445, 448 (Ind. Ct. App. 1999). Accordingly, we consider only the probative evidence and reasonable inferences supporting the verdict. Drane v. State, 867 N.E.2d 144, 146 (Ind. 2007). We do not reweigh the evidence or assess the credibility of witnesses, and we consider conflicting evidence most favorably

6

to the trial court's ruling.  Id.  We will affirm if there is substantial evidence of probative value from which the trier of fact could reasonably infer that the appellant was guilty beyond a reasonable doubt.  Dabner v. State, 258 Ind. 179, 182, 279 N.E.2d 797, 798 (1972).  But we will reverse if no reasonable trier of fact could find the elements of the offense proven beyond a reasonable doubt.  Drane, 867 N.E.2d at 146.

In juvenile delinquency proceedings, the State must prove every element of the offense beyond a reasonable doubt.  A.B. v. State, 885 N.E.2d 1223, 1226 (Ind. 2008).  It is generally not necessary that the evidence overcomes "every reasonable hypothesis of innocence."  Drane, 867 N.E.2d at 147.  However, evidence that merely tends to establish suspicion of guilt, rather than proof of it, is insufficient to sustain a guilty verdict.  Easton v. State, 248 Ind. 338, 344, 228 N.E.2d 6, 10-11 (1967).

In the instant case, A.M. was accused of knowingly or intentionally violating Indiana Code section 35-48-4-8.3(a), which provides:

> A person who possesses a raw material, an instrument, a device, or other object that the person intends to use for:
>
> (1) introducing into the person's body a controlled substance;
>
> (2) testing the strength, effectiveness, or purity of a controlled substance; or
>
> (3) enhancing the effect of a controlled substance;
>
> in violation of this chapter commits . . . possessing paraphernalia.

See Appellant's App. p. 7.

7

Under Indiana law, a controlled substance for the purpose of the possession of paraphernalia statute is defined as "a drug, substance, or immediate precursor in schedule I, II, III, IV, or V." Ind. Code § 35-48-1-9. At all times relevant to this case, marijuana has been classified as a schedule I drug. I.C. § 35-48-2-4(d)(22). On the other hand, synthetic marijuana, sometimes called "spice," was only added as a schedule I drug last year. Pub. L. No. 138-2011, § 12 (S.E.A. No. 57); Pub. L. No. 182-2011, § 12 (H.E.A. No. 2011). On January 11, 2012, the date of the instant offense, the listing for schedule I drugs included "synthetic cannabinoids, including a substance containing one (1) or more of [twenty-five explicitly named] chemical compounds." Id.[3]

Here, because the State's petition for delinquency alleged that the controlled substance that A.M. intended to smoke in the pipe was marijuana, the State was required to prove beyond a reasonable doubt that A.M. in fact intended to use the pipe to smoke marijuana and not some other controlled substance. See Atkinson v. State, 810 N.E.2d 1190, 1194 (Ind. Ct. App. 2004) (reversing the defendant's possession of paraphernalia conviction when the State's evidence failed to prove that he intended to use items of paraphernalia in the particular way alleged in the charging information). We have found no relevant cases, and the State has directed us to none, where proof beyond a reasonable

---

[3] This definition became effective on July 1, 2011, and remained in effect until February 22, 2012. Pub. L. No. 138-2011, § 12 (S.E.A. No. 57); Pub. L. No. 182-2011, § 12 (H.E.A. No. 2011); Pub. L. No 6-2012, § 233 (making minor edits to two of the named compounds). On March 15, 2012, schedule I was reworked to include "synthetic drugs," which were defined at Indiana Code 35-41-1-26.3 and included all of the formerly defined synthetic cannabinoid substances as well as numerous other chemical compounds. Pub. L. No. 78-2012, §§ 11, 12. On July 1, 2012, the section defining synthetic drugs was recodified into its current form at Indiana Code section 35-31.5-2-321. Pub. L. No. 114-2012, § 321.

doubt of a substance's identity was adequately founded solely on a person's sense of smell. And even if a conclusive identification of a controlled substance were possible on smell alone, we sincerely doubt that the evidence presented here would suffice. See Clifton, 499 N.E.2d at 258 (stating that even a visual identification is insufficient to prove a drug's identity beyond a reasonable doubt when the substance has no distinctive appearance).

Consequently, Officer Modlin's testimony purporting to identify the residue in the pipe as marijuana residue is insufficient circumstantial evidence to leave a reasonable trier of fact firmly convinced that A.M. intended to use the pipe to smoke marijuana. First, although Officer Modlin testified that he believed the residue was that of marijuana based on smell, he also acknowledged that the odors of burnt marijuana and burnt "spice" are "pretty close to the same thing" and that "[t]here's probably not going to be much difference at all." Tr. p. 35-36. Second, he repeatedly discredited the accuracy of his identification by stating that he "could be wrong" and that, to truly distinguish between marijuana and "spice," one "would just have to look at the chemical makeup between the two." Id. at 36.

Moreover, A.M.'s statements that "[t]he last thing I smoked out of it was spice" or that "[s]pice is like weed" do not supply a reasonable inference sufficient to meet the State's burden of proving beyond a reasonable doubt that A.M. intended to use the pipe to smoke marijuana. Petitioner's Ex. 1. While it is possible, as the State contends, that A.M. implied that he had smoked other substances such as marijuana with the pipe by

9

referring to "spice" as the "last thing" he smoked in it and comparing the "flavor[s]" of the two, A.M. never directly admitted to smoking marijuana or any substance other than "spice" with this or any other pipe. Id. This evidence, even coupled with the equivocal testimony of Officer Modlin, "merely tends to arouse suspicion of guilt" and thus cannot sustain A.M.'s adjudication. Bradley v. State, 153 Ind. App. 421, 427, 287 N.E.2d 759, 762 (1972).

We note that there is no evidence in the record that the State sought to have the pipe tested for the presence of drugs. If the State wishes to forego this step, which is routine in drug cases, it must be prepared to face the consequences. In sum, there is simply no probative evidence that proves beyond a reasonable doubt that A.M. intended to use this pipe to smoke marijuana.

Furthermore, there is no indication in the record that the juvenile court based its determination that A.M. was a delinquent child on A.M.'s intent to smoke "spice," which the State contends was also a controlled substance at the time. Appellee's Br. p. 6-7. The State's petition specifically alleged that A.M. had violated the possession of paraphernalia statute because he intended to use the pipe to smoke marijuana, not "spice." Appellant's App. p. 7. And although it is entirely possible that the "spice" A.M. had smoked last in the pipe was within the definition of synthetic cannabinoids prohibited under Indiana law as of January 11, 2012, the State presented no evidence that the "spice" referred to by A.M. had a chemical makeup placing it within that definition.

Nevertheless, even if the juvenile court had determined that the residue in the pipe was a synthetic cannabinoid based on an inference gleaned from Officer Modlin's statement that he was aware that "spice" can refer to synthetic marijuana or A.M.'s statement that "[s]pice is like weed," such an inference could not sustain A.M.'s adjudication as a delinquent child. More particularly, this would have constituted a material variance between the charging information and the proof presented at the fact-finding hearing such that A.M.'s adjudication here must be reversed. See Broude v. State, 956 N.E.2d 130, 135-136 (Ind. Ct. App. 2011), trans. denied (setting out the test for when material variances require reversal).

In conclusion, the State presented insufficient evidence by which a reasonable trier of fact could have found that A.M. intended to use the pipe he possessed to introduce marijuana into his body, and any inference that A.M. intended to use the pipe to ingest a synthetic cannabinoid nevertheless fails to support the offense specifically alleged in the delinquency petition filed by the State. Accordingly, A.M.'s adjudication as a delinquent child cannot stand.

The judgment of the juvenile court is reversed.

ROBB, C.J., and BRADFORD, J., concur.