## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 26 2019, 9:07 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Stacy R. Uliana
Bargersville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Benjamin J. Shoptaw
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Zachary Wilson,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

March 26, 2019

Court of Appeals Case No.
18A-CR-2337

Appeal from the Clay Circuit Court

The Honorable Joseph D. Trout, Judge

Trial Court Cause No.
11C01-1802-CM-77

**Crone, Judge.**

## Case Summary

[1] Zachary Wilson appeals his conviction for class B misdemeanor possession of marijuana. He argues that the evidence is insufficient to support his conviction. He also argues that one of the conditions of probation imposed by the trial court is improper. We conclude that the evidence is sufficient and therefore affirm Wilson's conviction. However, we agree that one of the probation conditions is improper and therefore remand with instructions to amend it.

## Facts and Procedural History

[2] On January 20, 2018, Clay County Sheriff's Deputies Robert VanBuren and Andrew Longyear visited the home where Wilson lived with his girlfriend, Dana Okulovich, to perform a welfare check. As the officers approached the home, they detected the odor of burnt marijuana. Deputy VanBuren knocked on the back door, and Wilson answered. Deputy VanBuren was familiar with Wilson and asked if Okulovich was home. Okulovich spoke with Deputy VanBuren on the porch. Deputy VanBuren informed Wilson and Okulovich that he smelled the odor of burnt marijuana, informed them of their *Miranda* rights, and asked for consent to search the home. They both refused consent.

[3] Deputy VanBuren obtained a search warrant for the home, while Deputy Longyear remained with Wilson and Okulovich in the kitchen. About an hour after the officers' initial approach of the residence, Deputy VanBuren obtained the search warrant. The officers began the search of the residence in the master bedroom. The bedroom held two dressers, one used by Okulovich, and the

other, a brown one in the corner, used by Wilson. Tr. Vol. 2 at 66-67. In the "top open area" of Wilson's dresser, Deputy VanBuren found a pair of hemostats with burnt residue on the ends and a black rectangular Samsung-branded container "that had small green plant-like material inside of it." *Id*. at 15-16. Based on his knowledge, experience, and training as a police officer, he believed that the substance in the black container was marijuana. *Id*. at 25-26.

[4] Deputy Longyear continued searching the same part of the dresser, which he described as a "cubby hole or drawer, where a drawer should be," and he found "several other small pieces of green leafy substances located in there." *Id*. at 34. From his training and experience, Deputy Longyear believed that the green leafy substance found in the Samsung container and in the "cubby hole or drawer" was marijuana. *Id*. Deputy Longyear recognized the odor of the green leafy substance as that of raw marijuana. *Id*. at 35. Deputy Longyear also smelled the burnt residue at the tip of the hemostats found in the dresser and concluded that the odor was consistent with that of burnt marijuana. Deputy Longyear observed that the dresser contained men's underwear and men's shirts. *Id*. at 43. Okulovich identified the compartment in which the officers found the hemostats, the black container, and the loose marijuana as Wilson's "junk drawer," which she did not "pilfer through." *Id*. at 67.

[5] The State charged Wilson with class B misdemeanor possession of marijuana. Wilson and Okulovich were jointly tried at a bench trial. The trial court found Wilson guilty as charged and acquitted Okulovich. The trial court sentenced Wilson to 180 days in jail, all suspended to probation. Paragraph 6 of Wilson's

probation conditions stated in part, "The defendant acknowledges that testing positive for any of the above will be deemed a violation of probation." Appellant's App. Vol. 2 at 23. This appeal ensued.

# Discussion and Decision

## Section 1 – The evidence is sufficient to support Wilson's conviction.

[6] Wilson challenges the sufficiency of the evidence supporting his conviction. In reviewing a claim of insufficient evidence, we do not reweigh the evidence or judge the credibility of witnesses, and we consider only the evidence that supports the judgment and the reasonable inferences arising therefrom. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). It is "not necessary that the evidence 'overcome every reasonable hypothesis of innocence.'" *Drane v. State*, 867 N.E.2d 144, 147 (Ind. 2007) (quoting *Moore v. State*, 652 N.E.2d 53, 55 (Ind. 1995)). "We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt." *Bailey*, 907 N.E.2d at 1005.

[7] To convict Wilson of class B misdemeanor possession of marijuana, the State was required to prove beyond a reasonable doubt that he knowingly or intentionally possessed marijuana. Ind. Code § 35-48-4-11(a)(1); Appellant's App. Vol. 2 at 12. Wilson first argues that the State failed to introduce sufficient evidence to establish that the substances found in Wilson's dresser were marijuana. The officers described what they found in Wilson's junk drawer as

"small green plant-like material" and "green leafy substances." Tr. Vol. 2 at 15, 34. Deputy Longyear also smelled the green leafy substance and recognized that it smelled like raw marijuana. Both officers testified that based on their training and experience, they believed that what they found was marijuana.[1]

[8] Our supreme court has explained,

> the testimony of an observer, skilled in an art or possessing knowledge beyond the ken of the average juror may be nothing more than a report of what the witness observed, and therefore, admissible as lay testimony. [T]he identity of a drug can be proven by circumstantial evidence. …. The opinion of someone sufficiently experienced with the drug may establish its identity, as may other circumstantial evidence. Although chemical analysis is one way, and perhaps the best way, to establish the identity of a compound, persons experienced in the area may be able to identify cigarette smoke, marijuana, and even toluene. This is true even if every citizen may not be up to that task.

*Vasquez v. State*, 741 N.E.2d 1214, 1216-17 (Ind. 2001) (citations and quotation marks omitted). *See also Helton v. State*, 907 N.E.2d 1020, 1024 (Ind. 2009) ("The State is not required to introduce the subject contraband to obtain a conviction for dealing or possession [of controlled substances]. The identity and quantity of a controlled substance, and the defendant's possession of or dealing in narcotics, may all be established through witness testimony and circumstantial evidence.") (citations omitted). Accordingly, we conclude that

---

[1] Wilson did not object to their testimony based on lack of sufficient foundation.

the officers' testimony is sufficient to identify the substance found in Wilson's dresser as marijuana. *See McConnell v. State*, 540 N.E.2d 100, 103-04 (Ind. Ct. App. 1989) ("In our opinion, Officer Lewis's testimony that the substance appeared to be marijuana was sufficient evidence from which the jury could infer that the substance was marijuana[.]").[2]

[9] Wilson also asserts that the State failed to introduce sufficient evidence that he knowingly possessed the marijuana. Wilson did not have actual possession of the marijuana, and therefore the State was required to prove that he had constructive possession of the marijuana. Constructive possession is established when "the State shows that the defendant has both (i) the intent to maintain dominion and control over the drugs and (ii) the capability to maintain dominion and control over the drugs." *Gee v. State*, 810 N.E.2d 338, 340 (Ind. 2004). Wilson asserts that the evidence of his intent to maintain dominion and control over the marijuana is insufficient because the State failed to prove that there was a sufficient quantity of the marijuana to support an inference that he

---

[2] Wilson argues that his case is like *A.M. v. State*, 981 N.E.2d 91 (Ind. Ct. App. 2012), in which another panel of this Court concluded that the evidence was insufficient to support A.M.'s adjudication as a juvenile delinquent for committing what would be possession of paraphernalia if committed by an adult. There, the statute under which A.M. was adjudicated a delinquent applied to a controlled substance, which included both marijuana and spice. *See* Ind. Code §§ 35-48-4-8.3(a) (defining possession of paraphernalia) and 35-48-2-4(d) (classifying marijuana and spice as schedule 1 controlled substances). The State charged A.M. with possession of paraphernalia with the intent to use it to smoke marijuana. The officer testified that the residue on the pipe smelled like marijuana but that the odors of burnt marijuana and burnt spice "are pretty close to the same thing." 981 N.E.2d at 95. The officer also admitted that he could be wrong, and that to truly distinguish between marijuana and spice, a person "would have to look at the chemical makeup between the two." *Id*. The court concluded that the evidence was insufficient to prove that A.M. intended to smoke marijuana from the pipe. *Id*. *A.M.* is readily distinguishable because the drug residue on the pipe could have been residue from either marijuana or spice.

knew it was in his junk drawer. He contends that even though the officers found the marijuana in the drawer, they were searching for it, and a person who was not searching for marijuana may not have noticed "marijuana remnants." Appellant's Br. at 11.

[10] "It is well established that the State need not plead or prove that any particular amount of narcotic drug was found." *Cooper v. State*, 171 Ind. App. 350, 362, 357 N.E.2d 260, 266 (1976). The State does not have to prove the existence of a particular amount of marijuana to support a conviction for class B misdemeanor possession of marijuana because this offense does not require possession of a particular amount. *See id*. at 363, 357 N.E.2d at 267 ("The statute under which Cooper was convicted makes no mention of an amount of drug necessary to sustain a conviction. It is reasonable to conclude, then, that the legislature intended that any identifiable amount be sufficient.").

[11] Nevertheless, pursuant to Indiana Code Section 35-48-4-11(a)(1), the State must prove that Wilson knowingly or intentionally possessed marijuana. Culpability is defined in Indiana Code Section 35-41-2-2:

> (a) A person engages in conduct "intentionally" if, when he engages in the conduct, it is his conscious objective to do so.

> (b) A person engages in conduct "knowingly" if, when he engages in the conduct, he is aware of a high probability that he is doing so.

"When constructive possession is asserted, the State must demonstrate the defendant's knowledge of the contraband." *Taylor v. State*, 482 N.E.2d 259, 261 (Ind. 1985) (quoting *Woods v. State*, 471 N.E.2d 691, 694 (Ind. 1984)). "This knowledge may be inferred from either the exclusive dominion and control over the premise[s] containing the contraband or, if the control is non-exclusive, evidence of additional circumstances pointing to the defendant's knowledge of the presence of the contraband." *Whitney v. State*, 726 N.E.2d 823, 826 (Ind. Ct. App. 2000) (quoting *Taylor*, 482 N.E.2d at 261). Here, Wilson does not dispute that he had exclusive possession of his dresser. Nevertheless, he argues that there was such a small amount of marijuana that additional evidence is necessary to show that he knew the marijuana was there.

[12] In support of his argument, Wilson relies on *Whitney*. There, Whitney was the driver and sole occupant of a vehicle he had borrowed, and he was stopped for a traffic violation. During the traffic stop, the officer learned that Whitney's license was suspended and arrested him. The officer smelled the odor of marijuana in the vehicle and saw in plain view a partially smoked marijuana cigarette on the floor of the driver's compartment. The officer searched the vehicle for other contraband and discovered a panel above the glove compartment that was loose. The officer popped it open and discovered a brown paper bag containing marijuana and cocaine. Whitney was charged with and convicted of possession of marijuana and possession of cocaine. He appealed his conviction for possession of cocaine, arguing that the State failed to prove that he knew that the cocaine was in the vehicle.

[13] The *Whitney* court noted that although Whitney had borrowed the vehicle, he had exclusive possession of the vehicle when he was arrested. *Id*. at 826. The court recognized that Whitney's exclusive possession was "some evidence" from which it might ordinarily be inferred that he was aware of the cocaine in the car. *Id*. However, because the cocaine was hidden in a secret compartment, the court held that "additional evidence of guilty knowledge" was necessary to establish intent. *Id*. The *Whitney* court concluded that such evidence existed, noting that the officer smelled marijuana emanating from the vehicle, a marijuana cigarette was on the floor of the driver's compartment, the panel behind which the drugs were hidden was popped open on one side, and marijuana was found in the secret compartment. *Id*. The court concluded that "based on Whitney's use of marijuana and the fact that marijuana was found in the secret compartment, the trier of fact could reasonably infer that Whitney knew the drugs were in the vehicle." *Id*.

[14] We cannot agree that this case is similar to *Whitney*. Here, the officers found the marijuana in Wilson's dresser, which held his personal items and over which he had exclusive control. Okulovich described the compartment in which the marijuana was found as Wilson's junk drawer. Okulovich was certainly aware of Wilson's junk drawer, and if she knew about it, then it is

reasonable to infer that Wilson knew about it.[3] Although both Wilson and Okulovich slept in the bedroom, she did not pilfer through Wilson's junk drawer. Further, regardless of the amount of marijuana found by the officers, it was in large enough pieces to be seen with the naked eye, and the officers also found a pair of hemostats with burnt marijuana residue in the same drawer. This evidence supports a reasonable inference that Wilson knew the marijuana was in his junk drawer. We conclude that the evidence is sufficient to support Wilson's conviction.

## Section 2 – The challenged probation condition must be amended.

[15] Paragraph 6 of Wilson's probation conditions prohibit him from possessing or using a number of substances, and the last sentence of that paragraph states, "The defendant acknowledges that testing positive for any of the above *will* be deemed a violation of probation." Appellant's App. Vol. 2 at 23-24 (emphasis added). Wilson contends that this condition removes the State's obligation to prove a probation violation and therefore must be modified in a manner similar to that in *Hoeppner v. State*, 918 N.E.2d 695 (Ind. Ct. App. 2009).

[16] In that case, Hoeppner's probation conditions included the following: "Positive results [of a lie detection test] *will* constitute a violation of your probation." *Id.*

---

[3] In his appellant's reply brief, Wilson argues that a "cubby hole," as Deputy Longyear referred to Wilson's junk drawer, may be similar to a hidden compartment. Appellant's Reply Br. at 4. Deputy Longyear explained that perhaps the dresser was missing a drawer, but the "cubby hole" was where a drawer would have been. Tr. Vol. 2 at 34.

at 700 (emphasis added). The *Hoeppner* court recognized Hoeppner's "concern that the clause seem[ed] to deprive him of due process rights by stating that positive results *will* constitute a probation violation, seemingly removing the State's obligation to prove that a violation has, in fact, occurred."[4] *Id*. (citing Ind. Code § 35-38-2-3, requiring State to prove probation violation by a preponderance of the evidence). The *Hoeppner* court remanded with instructions to the trial court to amend the sentence to replace "will" with "may." *Id*.

[17] The State acknowledges that to the extent that the sentence Wilson objects to removes the State's obligation to prove that he violated probation, applying the clause would violate his due process rights. Thus, to avoid any violation of Wilson's due process rights, we remand with instructions to the trial court to amend the sentence at issue to read, "The defendant acknowledges that testing positive for any of the above may be deemed a violation of probation."

[18] Affirmed and remanded.

Vaidik, C.J., and Mathias, J., concur.

---

[4] The *Hoeppner* court observed that the results of a polygraph examination are not admissible in criminal proceedings because it had not been found to be scientifically reliable, but that "said results are admissible in a probation revocation proceeding because a probation revocation hearing is not an adversarial criminal proceeding, but a civil matter which requires more flexible procedures." 918 N.E.2d at 700.