ATTORNEY FOR APPELLANT
James R. Recker
Indianapolis, IN

ATTORNEYS FOR APPELLEES
Steve Carter
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General

## In the
## Indiana Supreme Court

FILED
May 13 2008, 3:41 pm

CLERK
of the supreme court,
court of appeals and
tax court

No.  67S01-0709-JV-373

A.B.,                                                                              *Appellant (Respondent below),*

v.

STATE OF INDIANA,                                                    *Appellee (Petitioner below)*

Appeal from the Putnam Circuit Court, No. 67C01-0603-JD-20
The Honorable Judge Matthew Headley

On Transfer from the Indiana Court of Appeals, No. 67A01-0609-JV-372

**May 13, 2008**

**Dickson, Justice.**

A.B., a juvenile, appeals her adjudication as a delinquent child for her postings on the Internet site MySpace.com that, if committed by an adult, would constitute the criminal offense of Harassment.[1]  The Court of Appeals reversed, concluding that A.B.'s allegedly harassing messages were protected political speech.  A.B. v. State, 863 N.E.2d 1212 (Ind. Ct. App. 2007), *reh'g denied*.  Disagreeing with this rationale, we granted transfer,[2] and now also reverse the trial

---

[1] Indiana Code §35-45-2-2 (2004).

[2] The grant of transfer operates to automatically vacate the opinion of the Court of Appeals unless this Court expressly adopts or affirms the Court of Appeals.  Ind. Appellate Rule 58(A).

court, but for different a reason: the State failed to prove all of the statutory elements for the offense of Harassment.

As a preliminary matter, we note that the evidence presented at the fact-finding hearing was extremely sparse, uncertain, and equivocal regarding the operation and use of MySpace.com ("MySpace"), which is central to this case. Only two witnesses testified at the fact-finding hearing, the school principal and A.B.'s mother. No expert witnesses were called. Neither of the witnesses provided knowledgeable and reliable details about MySpace. The primary source of information about MySpace came from the testimony of the principal, whose "understanding [came] from talking to students and trying to go figure how to go about researching this." Tr. at 25. The principal testified: "I don't get on MySpace." Tr. at 36. The Commentary to Canon 3B of the Indiana Code of Judicial Conduct advises: "A judge must not independently investigate facts in a case and must consider only the evidence presented." Notwithstanding this directive, in order to facilitate understanding of the facts and application of relevant legal principles, this opinion includes information regarding the operation and use of MySpace from identified sources outside the trial record of this case.

MySpace is "an online community that lets you meet your friends' friends."[3] Most aptly described as a social networking site, individuals can create "profiles" listing their interests in books, television, music, movies, and so forth, as well as posting pictures, music, and videos.[4] MySpace allows its members to control who can view the entirety of their "profile."[5] On all "profiles," certain information is displayed to other members and visitors that "allows our users to identify each other and expand their network of friends."[6] MySpace users have a choice to

---

[3] About Us--MySpace.com, http://www.myspace.com/index.cfm?fuseaction=misc.aboutus (last visited March 31, 2008).

[4] MySpace, http://www.myspace.com (last visited March 31, 2008).

[5] Privacy-MySpace.com, http://www.myspace.com/index.cfm?fuseaction=misc.privacy (last visited March 31, 2008).

[6] *Id.*

make their "profiles" public or private.[7]  For example, if a member wishes to restrict public access to her "profile," she may make it viewable to only those that she has accepted as friends, but information such as the member's photo and first name are still displayed for public view.[8]  A "group" page differs from a "profile" in that "group" pages are sites where people of common interests can join and make postings.[9]  A "group" can be public or private at the discretion of its "moderator," or creator.[10]  Various sources cite MySpace user demographics to be predominantly between the ages of fourteen and thirty-four, with thirty-four being considered a high estimate due to people altering their ages to skew higher in some cases to mask their true age or to be humorous.[11]

When the 2005-06 school year began, A.B. was a student at Greencastle Middle School, where Shawn Gobert had been principal for thirteen years.  Sometime before February 2006, she transferred to a different school.  In February 2006, Mr. Gobert learned from some of his students of a vulgar tirade posted on MySpace that apparently targeted his actions in enforcing a school policy.  As appropriate for a responsible and prudent school administrator, Mr. Gobert investigated.  With the assistance of others, including some students, he discovered that a "Mr. Gobert" "profile" had been created on a MySpace Internet web page, purportedly by him, and on which A.B. had posted a vulgarity-laced tirade directed against him.  In fact, another juvenile, R.B., a friend of A.B. and at the time a student at Greencastle Middle School, had created this false "Mr. Gobert" MySpace private "profile" and allowed access to it by twenty-six designated "friends," one of whom was A.B.  A.B. then made her posting about Mr. Gobert on this private "profile".  Thereafter, however, A.B. created her own MySpace "group" page, accessible by the

---

[7] *Id.*

[8] *Id.*

[9] *See generally,* http://www.myspace.com.

[10] *Id.*

[11] *See* Micropersuasion: MySpace Mania, http://www.micropersuasion.com/2006/03/myspace_ mania.html (last visited March 31, 2008); Trendcatching: Myspace usage statistics, http:// www.trendcatching.com /2006/05/myspace_usage_s.html (last visited March 31, 2008); MySpace Statistics, http://scottelkin.com/archive/2007/05/11/Myspace-Statistics.aspx (last visited March 31, 2008).

general public, and titled with a vulgar expletive directed against Mr. Gobert and Greencastle schools. State's Exhibit 2.

As a result, delinquency proceedings were initiated against A.B. The amended petition alleging delinquency charged A.B. with nine counts. Three of those counts, Count II, Count VI, and Count IX, were dismissed at the fact-finding hearing. The remaining counts each allege conduct by A.B., a minor, that if committed by an adult would constitute Harassment, a class B felony pursuant to Indiana Code § 35-45-2-2(a)(4). The various surviving counts allege her use of a computer network to harass Mr. Gobert. Counts I and V allege that A.B. used a computer network to transmit the following:

> "hey you piece of greencastle s\*\*t. what the f\*\*k do you think of me know (sic) that you cant [sic] control me? huh? ha ha ha guess what ill [sic] wear my f\*\*king piercings all day long and to school and you cant [sic] do s\*\*t about it.! ha ha f\*\*king ha! stupid b\*\*tard!

Appellant's App'x at 32-4.[12] Counts III and VII each allege Harassment based on A.B.'s transmission of "die...gobert...die;" and Counts IV and VIII are based on A.B.'s transmission of "F\*\*K MR. GOBERT AND GC SCHOOLS!" Appellant's App'x at 32-4 (expletives identified symbolically).

> The offense of Harassment in the Indiana Criminal Code, includes the following:
>
> A person who, with intent to harass, annoy, or alarm another person but with no intent of legitimate communication:
> . . .
> (4) uses a computer network . . . or other form of electronic communication to
> (A) communicate with a person; or
> (B) transmit an obscene message or indecent or profane words to a person;
> commits harassment, a Class B misdemeanor.

Indiana Code § 35-45-2-2(a)(4) (2004).

For a person to commit an act with the intent to harass, annoy, or alarm another person, common sense informs that the person must have a subjective expectation that the offending conduct will likely come to the attention of the person targeted for the harassment, annoyance, or

---

[12] In this and other MySpace statements by A.B. quoted in this opinion, the vulgar expletives actually used are identified symbolically.

4

alarm. In J.T. v. State, 718 N.E.2d 1119, 1124 (Ind. Ct. App. 1999), a delinquency adjudication was reversed when the Court of Appeals concluded that a student did not "know or have good reason to believe" that the alleged harassing information "would reach" the victim, and thus "did not have the requisite intent to commit harassment." *Id*. at 1124.

The surviving counts in this matter differ as to the date of the alleged misconduct (February 15, 16, or 17, 2006), and they also differ in that some allege harassment by communicating with a person, in violation of subsection 2(a)(4)(A), and others charge harassment by transmitting an obscene message or indecent or profane words, in violation of subsection 2(a)(4)(B). These distinctions do not affect our analysis because the intent element is the same for both violations. On the other hand, we note a potential difference depending upon whether the web posting is publicly accessible. Counts I, III, V, and VII identify A.B.'s postings on her friend's false "Mr. Gobert" private MySpace "profile." Counts IV and VIII refer to language used in the public MySpace "group" page created by A.B.

A.B. contends on appeal that the evidence failed to prove the requisite intent common to all the surviving counts: that she transmitted the messages with the intent to harass, annoy, or alarm Shawn Gobert but without any intent of legitimate communication.

In juvenile delinquency adjudication proceedings, the State must prove every element of the offense beyond a reasonable doubt. C.D.H. v. State, 860 N.E.2d 608, 610 (Ind. Ct. App. 2007). On appeal, our Court does not reweigh the evidence or judge the credibility of witnesses. Al-Saud v. State, 658 N.E.2d 907, 909 (Ind. 1995). "Reviewing solely the evidence and the reasonable inferences from that evidence that support the fact finder's conclusion, we decide whether there is substantial evidence of probative value from which a reasonable fact finder could find beyond a reasonable doubt that the defendant committed the crime." *Id.* at 909. We will not disturb the fact finder's conclusion if the fact finder could reasonably find, beyond a reasonable doubt, that the defendant committed the charged crime. *Id*.

We must thus determine whether substantial evidence of probative value was presented at trial from which a reasonable fact finder could conclude beyond a reasonable doubt that A.B.'s conduct, if committed by an adult, would constitute the offense of harassment as charged.

The trial court's written findings referred to postings by A.B. on both her friend's private "profile" and on A.B.'s public "group." To the extent arguably related to the intent element, the court's order finding A.B. to be a delinquent child included these findings:

> Here, Mr. Gobert is the principal. The web site was accessible by other students and the public. It is obvious to the Court that such information, while not directly sent to Mr. Gobert, was going to end up with him, due to the job and standing within the juvenile community. [Appellant's App'x at 80.]

> While the court does not know exactly what [A.B.'s] intent was, from the common sense reading of the displayed message, the Court can not envision any other intent but to harass, annoy or alarm. [*Id.* at 81.]

> [T]he Court can not envision when such communication could be labeled "legitimate." [*Id.*]

The allegedly harassing communications by A.B. identified in Counts I, III, V, and VII were postings by A.B. on her friend's MySpace "private profile" site. This "profile" site, and A.B.'s comments posted on it, could not be seen by the general public except for those persons specifically accepted as "friends" by the creator of the "profile." This posting was not viewable by the general public, and Mr. Gobert was able to view it only because R.B., the student who created the "profile," eventually authorized him to access the "profile" during his investigation. At the fact-finding hearing, there was no evidence showing that A.B. expected that Mr. Gobert would see or learn about A.B.'s messages posted on the private "profile." We find no probative evidence or reasonable inferences to establish that A.B., when making her postings on her friend's private "profile," had a subjective expectation that her conduct would likely come to the attention of Mr. Gobert.

The analysis differs as to Counts IV and VIII, which refer to A.B.'s remarks on her MySpace "group" page. Because this site was publicly accessible, it may be reasonably inferred that A.B. had a subjective expectation that her words would likely reach Mr. Gobert. This alone, however, does not establish the intent element specified in the Harassment statute. To commit

6

the offense of Harassment, a person must have "the intent to harass, annoy, or alarm another person *but with no intent of legitimate communication*." I.C. § 35-45-2-2(a) (emphasis added). While A.B. titled her "group" page with the vulgar expletive, her own posting on the page elaborated as follows:

> [R.B.] made a harmless joke profile for Mr. Gobert. and [sic] some retarded b**ch printed it out and took it to the office. [R.B.] is expelled, has to go to court, might have to go to girl [sic] school, and has to take the 8th grade over again! that's [sic] just from the school, her paretns [sic] have grounded her, and took [sic] her computer, she cant [sic] be online untill [sic] 2007! GMS is full of over reacting idiots!

State's Exhibit 2. Other than the title and this posting on A.B.'s "group" page, there was no other evidence relevant to the issue of her intent as to Counts IV and VIII. And the content of the posting presents strong evidence that A.B. intended her "group" page as legitimate communication of her anger and criticism of the disciplinary action of Mr. Gobert and the Greencastle Middle School against her friend, the creator of the private "profile." This affirmative proof makes it impossible for the State to have carried its burden to prove "*no intent of legitimate communication*." I.C. § 35-45-2-2(a)(emphasis added).

Notwithstanding the trial court's observation that it could not "envision" any intent other than to harass, annoy, or alarm Mr. Gobert, we find this conclusion unsupported by the evidence, particularly the lack of knowledgeable testimony regarding the nature and operation of MySpace and the extent to which its "profiles" and "groups" are publicly accessible. We also observe that it is even more plausible that A.B., then fourteen-years old, merely intended to amuse and gain approval or notoriety from her friends, and/or to generally vent anger for her personal grievances. Reviewing the evidence presented at the fact-finding hearing, we conclude that there was insufficient substantial evidence of probative value to prove beyond a reasonable doubt that A.B. had the requisite intent to harass, annoy, or alarm Mr. Gobert when she made the postings. We find no evidence or reasonable inferences sufficient to prove that A.B., in making the MySpace statements with which she was charged, did so with the requisite statutory intent.

Because the evidence failed to prove that A.B. made postings and comments on MySpace with the intent "to harass, annoy, or alarm" her former principal "but with no intent of legitimate

communication," I.C. § 35-45-2-2(a), the requisite intent common to the six Counts on which A.B. was adjudicated a delinquent child, we reverse the judgment of the trial court.

Shepard, C.J., and Sullivan, Boehm, and Rucker, JJ., concur.