## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 29 2016, 8:03 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jennifer L. Koethe
LaPorte, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In The Matter of J.H.,

A Child Alleged To Be
Delinquent,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

November 29, 2016

Court of Appeals Case No.
46A03-1604-JV-945

Appeal from the LaPorte Circuit
Court

The Honorable Thomas Alevizos,
Judge

The Honorable W. Jonathan
Forker, Magistrate

Trial Court Cause No.
46C01-1512-JD-213

**Bailey, Judge.**

# Case Summary

J.H. was adjudicated a delinquent, with the trial court entering true findings for (1) Leaving Home Without Permission[1] and (2) Theft.[2]  On appeal, J.H. challenges his Leaving Home Without Permission adjudication as well as aspects of the juvenile court's disposition.  We affirm.

# Issues

J.H. raises two restated issues:

> I.      Whether the evidence is sufficient to support his true finding of Leaving Home Without Permission; and

> II.     Whether the juvenile court abused its discretion when it placed J.H. in a residential facility.

# Facts and Procedural History

On November 23, 2015, sixteen-year-old J.H. was with his mother ("Mother") at a Dollar Tree store in Michigan City, Indiana.  Without Mother's permission, J.H. left Dollar Tree and went to the nearby Family Dollar store, where Kimberly Walker ("Walker") was working.  Walker saw J.H. pick up underwear and walk behind the end of an aisle.  When Walker heard a rattle of

---

[1] Ind. Code § 31-37-2-2.

[2] I.C. § 35-43-4-2.

packaging, she approached J.H. and saw him put a scarf and underwear in his jacket. J.H. then looked at Walker, said "I was not stealing," and began to pull items from his pockets as he exited. Just outside the store, J.H. dropped gloves with tags on them. He ran toward Dollar Tree and got in line with Mother.

[4] Walker went to Dollar Tree to alert staff, who told her to call the police. When the police arrived, J.H. had again left without Mother's permission. Mother reported J.H. as a runaway and requested that police bring J.H. to Dollar Tree.

[5] On December 11, 2015, the State alleged J.H. to be a delinquent for (1) Leaving Home Without Permission and (2) Theft, which would be a Class A misdemeanor if committed by an adult. The State also included allegations of Theft and Intimidation for unrelated incidents. Following a fact-finding hearing on March 28, 2016, the juvenile court entered true findings for the Leaving Home Without Permission and Theft allegations related to the November 23 events. There were no true findings for the other allegations.

[6] Following the fact-finding hearing, the juvenile court asked J.H. and the State when they wanted to hold a dispositional hearing. J.H. and the State indicated they were ready, and the juvenile court proceeded to disposition. The probation department recommended that J.H. be placed at a particular residential facility, basing its recommendation on the services J.H. had previously received as well as letters from two psychiatrists that recommended residential placement. The probation officer present at the hearing noted that the particular facility no longer had a bed immediately available for J.H. but

one would be available in May 2016, and recommended that J.H. remain on the secure side of the detention center until then. The State agreed with the recommendation but the defense objected to residential placement. The juvenile court followed the probation department's recommendation in entering its dispositional decree.

[7] J.H. now appeals.

# Discussion and Decision

## Sufficiency of the Evidence

[8] In juvenile delinquency adjudication proceedings, the State must prove every element of the offense beyond a reasonable doubt. *A.B. v. State*, 885 N.E.2d 1223, 1226 (Ind. 2008). We do not reweigh the evidence or judge the credibility of witnesses. *Al-Saud v. State*, 658 N.E.2d 907, 909 (Ind. 1995). Rather, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id.* We affirm if the evidence and those inferences constitute substantial evidence of probative value to support the judgment. *A.B.*, 885 N.E.2d at 1226.

[9] Indiana law provides that a "child commits a delinquent act if, before becoming eighteen (18) years of age, the child leaves home or a specific location previously designated by the child's parent, guardian, or custodian: (1) without reasonable cause; and (2) without permission of the parent, guardian, or custodian, who requests the child's return." I.C. § 31-37-2-2.

[10] J.H. points out that he and Mother never had a specific conversation at Dollar Tree about him staying at the store. Thus, J.H. seemingly challenges whether the State proved J.H. left a designated location without permission. Here, at the fact-finding hearing, Mother testified that J.H. did not have permission to leave Dollar Tree. As a general rule, J.H. was to stay with her in the store, and he did not have permission to go where he wanted without telling her. J.H. did not tell Mother he was leaving. Under these facts, we find J.H.'s challenge to the location and permission elements unavailing.

[11] More pointedly, however, J.H. suggests the evidence is insufficient because Mother asked the police to return J.H. to the Dollar Tree but she did not ask J.H. to return. J.H. relies on *T.W. v. State*, 864 N.E.2d 361, 365 (Ind. Ct. App. 2007), *trans. denied*. There, in the context of a case involving a request directed at a child to return, we used language about making the request to the child. The statute, however, does not expressly specify to whom a parent must direct her request. *See* I.C. § 31-37-2-2 (requiring that the "parent, guardian, or custodian . . . request the child's return."). Nonetheless, when examining the statute in *T.W.*, we observed as we do now that the "goal of statutory construction is to determine, give effect to, and implement the intent of the legislature." *T.W.*, 864 N.E.2d at 365 (citing *Sales v. State*, 723 N.E.2d 416, 420 (Ind. 2000)). We presume the legislature "intended the language used in the statute to be applied logically and not to bring about an unjust or absurd result." *Id.* Here, J.H. invites an illogical reading of the "runaway" statute, in which

the statute would never apply where a parent could not contact the child after the child ran away. This could not have been the legislature's intent.

[12] We find that the evidence is sufficient to sustain J.H.'s adjudication.

## Residential Placement

[13] The juvenile court has discretion to choose the specific disposition of a juvenile adjudicated a delinquent, "subject to the statutory considerations of the welfare of the child, the community's safety, and the Indiana Code's policy of favoring the least harsh disposition." *C.T.S. v. State*, 781 N.E.2d 1193, 1202 (Ind. Ct. App. 2003). We will not reverse a juvenile disposition unless the juvenile court abuses its discretion. *Id.* The juvenile court abuses its discretion if its action is "clearly erroneous and against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *D.B. v. State*, 842 N.E.2d 399, 404-05 (Ind. Ct. App. 2006).

[14] Indiana Code Section 31-37-18-6 sets forth a list of factors that the juvenile court must consider in entering a dispositional decree, and provides as follows:

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
>
> (1) is:
>
>> (A) in the least restrictive (most family like) and most appropriate setting available; and

> (B) close to the parents' home, consistent with the best interest and special needs of the child;
>
> (2) least interferes with family autonomy;
>
> (3) is least disruptive of family life;
>
> (4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and
>
> (5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

[15]   We have previously noted that this section requires that the juvenile court select the least restrictive placement in most situations. *D.B.*, 842 N.E.2d at 405. "However, the statute contains language which reveals that under certain circumstances a more restrictive placement might be appropriate." *K.A. v. State*, 775 N.E.2d 382, 386-87 (Ind. Ct. App. 2002), *trans. denied*. Indeed, the statute requires placement in the least restrictive setting only if such placement is "consistent with the safety of the community and the best interest of the child." I.C. § 31-37-18-6. In other words, "the statute recognizes that in certain situations the best interest of the child is better served by a more restrictive placement." *K.A.*, 775 N.E.2d at 387.

[16]   J.H. argues that the juvenile court abused its discretion in ordering his placement in the particular residential facility because "there was no evidence presented that another similar or less restrictive program in La Porte County was not available or that [the probation's department's proposed residential

facility] was the most appropriate facility." (Appellant's Br. at 14.) Here, the predispositional report indicated that J.H. had two previous true findings, multiple diagnoses, and a history of school suspensions. Mother had been trying to find residential placement for J.H., but was unable to find a facility that would accept him. At the hearing, the probation officer observed that J.H. had previously been provided Level 1 home detention, Level 2 home detention, supervised probation, administrative probation, GPS monitoring, secure detention, and non-secure detention. J.H. had also received outpatient and inpatient care as well as counseling, therapy, psychiatric services, and medication management. Two psychiatrists wrote letters recommending residential placement. Moreover, at the hearing, Mr. Bunch ("Bunch"), a licensed therapist who submitted a report, opined that residential placement was best for J.H. and noted that J.H. "flourish[es] under [the] structure and consistency" of a secure facility. (Tr. 90-91).

[17] The statute requires placement in the least restrictive setting only if such placement is "consistent with the safety of the community and the best interest of the child." I.C. § 31-37-18-6. Here, the juvenile court heard that a series of less-restrictive options had not been effective, and several professionals opined that placement was in J.H.'s best interests. We cannot say that the trial court abused its discretion when placing J.H. in the residential facility, or by ordering that J.H. stay in the detention facility until a bed in the residential facility was available.

[18] J.H. further argues that the juvenile court erred because "no testimony was presented from probation and there was no opportunity for J.H.'s counsel to cross examine witnesses regarding the pre-dispositional report, probation's recommendation and the reports from J.H.'s psychologists." (Appellant's Br. at 14). The record reflects, however, that during the dispositional phase of the hearing—which J.H. elected to immediately begin—the probation department did offer its recommendation. J.H. did not cross-examine the probation department's statements, call witnesses, or challenge the content of the predispositional report. J.H. did remark that he was not aware of Bunch's report. In response, the juvenile court noted that it had asked about proceeding to disposition because it "didn't know if [J.H.] wanted time to review things and come back at another time[,]" and would consider postponing, but J.H. did not respond. (Tr. at 91.)

[19] We find that, contrary to J.H.'s characterization, it was not that J.H. was deprived of any opportunity but that J.H. did not take advantage of the opportunity that was presented to him. Accordingly, J.H. has waived this line of argument. *See Dillard v. State*, 827 N.E.2d 570, 577 (Ind. Ct. App. 2005) (finding waiver in the criminal context where a defendant, "having been afforded the opportunity to review the [presentence investigation] report[,] . . . fail[ed] to register an objection to the information contained therein . . . ."), *trans denied*.

# Conclusion

[20] The evidence is sufficient to support J.H.'s adjudication of Leaving Home Without Permission and the trial court did not abuse its discretion in ordering that J.H. be placed in a residential facility.

[21] Affirmed.

Najam, J., and May, J., concur.