

ATTORNEYS FOR APPELLANT

Donald E.C. Leicht
Derick W. Steele
Kokomo, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Constance J. McGuire,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | August 27, 2019<br><br>Court of Appeals Case No.<br>18A-CR-2554<br><br>Appeal from the Howard Superior Court<br><br>The Honorable Douglas A. Tate, Judge<br><br>Trial Court Cause No.<br>34D03-1801-CM-90 |

**Bailey, Judge.**

# Case Summary

[1] Following a bench trial, Constance McGuire ("McGuire") was convicted of Class B misdemeanor Harassment[1] relating to statements she posted online. McGuire now appeals. She challenges the sufficiency of the evidence and alleges her conviction is improper because she was engaged in constitutionally protected speech. Because we identify sufficient evidence and conclude McGuire transmitted a constitutionally proscribable true threat, we affirm.

# Facts and Procedural History[2]

[2] McGuire had a son who died after consuming methamphetamine during a traffic stop. Officer Jeramie Dodd ("Officer Dodd") of the Kokomo Police Department was present at the stop. At some point, McGuire posted several statements on Facebook mentioning Officer Dodd. These statements were visible to over 1,000 people who were "friends" with McGuire on the social media platform. Officer Dodd was not within that group of people. However, a concerned citizen contacted Officer Dodd and passed along the statements. In those statements, McGuire asserted that Officer Dodd killed her son. She also said: "Yes he set my son up to die. He did do it and so did KPD so y'all better watch out for me cuz I'm coming for all of younand if u work n that Jail

---

[1] Ind. Code § 35-45-2-2(a)(4)(B).

[2] We held oral argument on July 24, 2019. We thank the advocates for their skilled presentations.

I'm comn for u to so u better watch out this mother is on a rampage and ready to shoot to kill." Ex. 1.[3] In one post, McGuire wrote: "Fuck Jeremy Dodd like I said he a whole bitch kill urself u bastard." *Id.* At the end of the post, McGuire wrote: "Everyone share." *Id.* McGuire also wrote: "FUCK KPD OFFICER JERemy DODD yes I said it loud and proud FUCK U PIG DO SUMTHN BITCH if u don't know now u kno." *Id.* McGuire also mentioned Officer Dodd and said that "when it comes to my kids anyone can get it." *Id.*

[3] The State charged McGuire with Class B misdemeanor Harassment. A bench trial was held in September 2018 at which McGuire represented herself and elected to testify. The trial court took the matter under advisement. At an ensuing hearing, the court found McGuire guilty and pronounced its sentence.

[4] McGuire now appeals.

# Discussion and Decision

[5] The State charged McGuire with Harassment under Indiana Code Section 35-45-2-2(a)(4)(B), which provides—in pertinent part—as follows: "A person who, with intent to harass, annoy, or alarm another person but with no intent of legitimate communication . . . uses a computer network . . . or other form of

---

[3] Because Exhibit 1 consists of a series of screenshots, which are images showing content on a computer display—*e.g.*, a smartphone screen—we transcribe the content verbatim, without denoting deviation from Modern English.

electronic communication to . . . transmit an obscene message or indecent or profane words to a person . . . commits harassment, a Class B misdemeanor."

[6] This statute regulates speech, which is afforded protection through the First Amendment to the United States Constitution and Article 1, Section 9 of the Indiana Constitution. *See* U.S. Const. amend. I; Ind. Const. art. 1, § 9. The First Amendment reflects the "bedrock principle . . . that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397, 414 (1989). Indeed, law that "discriminates on the basis of viewpoint . . . collide[s] with" the First Amendment. *Iancu v. Brunetti*, 139 S. Ct. 2294, 2299 (2019). Whereas the federal constitution is concerned with any viewpoint-based law—irrespective of whether the impaired speech is political—our Article 1, Section 9 focuses on protecting political speech. *See Price v. State*, 622 N.E.2d 954, 963 (Ind. 1993).

[7] There are different types of constitutional challenges. For example, sometimes litigants directly challenge the constitutionality of a statute by alleging facial viewpoint bias. *See, e.g.*, *Iancu*, 139 S. Ct. at 2298 (involving a facial challenge to a trademark law prohibiting registration of immoral or scandalous marks). Here, McGuire presents no challenge to the facial validity of the instant statute, and so we leave that type of statutory inquiry for another day. McGuire instead contends her specific Facebook posts were constitutionally protected, and that her conviction amounts to an unconstitutional impairment of speech. McGuire also alleges insufficient evidence supporting the conviction.

[8] We approach a typical sufficiency challenge with "great deference" to the fact-finder. *Brewington v. State*, 7 N.E.3d 946, 955 (Ind. 2014). That is, "[w]e neither reweigh evidence nor judge witness credibility." *Gibson v. State*, 51 N.E.3d 204, 210 (Ind. 2016). Moreover, we view the "evidence and reasonable inferences drawn therefrom in a light most favorable to the conviction, and will affirm 'if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt.'" *Walker v. State*, 998 N.E.2d 724, 726 (Ind. 2013) (quoting *Davis v. State*, 813 N.E.2d 1176, 1178 (Ind. 2004)). However, to the extent the instant appellate issues implicate principles of freedom of speech, the Indiana Supreme Court has held that "[d]eferential review . . . creates an unacceptable risk of under-protecting speech." *Brewington*, 7 N.E.3d at 955. Indeed, because of the importance of protecting free public discourse, we have a "constitutional duty," *id.*, to independently examine the record "to assure ourselves that the judgment does not constitute a forbidden intrusion on the field of free expression," *Journal-Gazette Co., Inc. v. Bandido's, Inc.*, 712 N.E.2d 446, 455 (Ind. 1999) (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 285 (1964)). This rule of independent review— conducted *de novo*—"assigns to judges a constitutional responsibility that cannot be delegated to the trier of fact," no matter whether the trier of fact is a judge or a jury. *Brewington*, 7 N.E.3d at 955 (quoting *Bandido's*, 712 N.E.2d at 455). The *de novo* approach has been applied to claims under the First Amendment, *see id.*, and we see no reason it would not apply to claims under Article 1, Section 9.

# Sufficiency of the Evidence

[9] Turning to the sufficiency challenge, McGuire asserts she failed to transmit messages to Officer Dodd. Yet, there is no question McGuire engaged in transmission. There was transmission the moment McGuire posted online, broadcasting to a virtual room containing more than 1,000 people. McGuire appears to be challenging the sufficiency of evidence on the basis that Officer Dodd was not inside the virtual room, and it was someone else who passed along the messages "without permission." Br. of Appellant at 6. Yet, to be criminally liable under the statute, McGuire need not have directly transmitted the messages to the target of her harassment. Rather, McGuire must have transmitted the messages "to a person," I.C. § 35-45-2-2(a)(4)(B), which she did. To the extent McGuire is alleging she lacked the intent to harass, annoy, or alarm Officer Dodd because the messages were not directly available to him, "[f]or a person to commit an act with the intent to harass, annoy, or alarm another person, common sense informs that the person must have a subjective expectation that the offending conduct will likely come to the attention of the person targeted for the harassment, annoyance, or alarm." *A.B. v. State*, 885 N.E.2d 1223, 1226 (Ind. 2008). Here, McGuire wrote "Everyone share" in a post suggesting Officer Dodd kill himself. Ex. 1. McGuire also addressed Officer Dodd: "DO SUMTHN . . . if u don't know now u kno." *Id.* She also wrote: "I'm sure I'll get another visit from KPD over my post." *Id.* Thus, in light of the content of the messages, there is sufficient evidence to conclude that

McGuire had the expectation that the offending conduct would come to the attention of Officer Dodd when she transmitted the messages online.

[10] McGuire also asserts her "Facebook postings do not qualify as obscene." Br. of Appellant at 6. Yet, the instant statute, written in the disjunctive, criminalizes the transmission of "an obscene message or indecent or profane words to a person," I.C. § 35-45-2-2(a)(4)(B)—and we discern no failure of proof concerning the transmission of indecent or profane words. Indeed, McGuire issued a profanity-laced threat and urged Officer Dodd to commit suicide.

[11] Finally, to the extent McGuire challenges the sufficiency of evidence regarding intent to engage in "legitimate communication," this inquiry collapses into the next issue—the constitutional challenge to the conviction. This is because we have interpreted the statutory phrase "no intent of legitimate communication" as creating a "specific intent requirement preclud[ing] the application of this statute to constitutionally protected legitimate communications." *Kinney v. State*, 404 N.E.2d 49, 51 (Ind. Ct. App. 1980). We therefore turn now to the protections found in the First Amendment and Article 1, Section 9, while beginning our inquiry into whether the posts constituted proscribable speech.

# First Amendment

[12] Upon a First Amendment challenge to a conviction, we evaluate whether the speech fell within an "unprotected category." *See Price*, 622 N.E.2d at 965. Indeed, certain content is "constitutionally proscribable." *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 383 (1992) (emphasis removed). One proscribable

category is that which constitutes a true threat, *Virginia v. Black*, 538 U.S. 343, 359 (2003), for which there are "two necessary elements: that the speaker intend his communications to put his targets in fear for their safety, and that the communications were likely to actually cause such fear in a reasonable person similarly situated to the target," *Brewington*, 7 N.E.3d at 964. Here, McGuire repeatedly posted about Officer Dodd. She accused Officer Dodd of killing her son, urged him to commit suicide, and suggested law enforcement "better watch out this mother is on a rampage and ready to shoot to kill." Ex. 1. This speech amounted to a constitutionally proscribable true threat. *See Brewington*, 7 N.E.3d at 978 (noting the First Amendment "does not permit threats against the safety and security of any American, even public officials, regardless of whether those threats are accompanied by some protected criticism"). Thus, we conclude the instant speech could be regulated consistent with federal constitutional principles.[4] Moreover, in view of the true threat contained in the speech, there is sufficient evidence McGuire lacked the intent to engage in "legitimate communication" with regard to the United States Constitution.

---

[4] Consistent with the First Amendment, threatening speech is also regulated under the Indiana statute criminalizing Intimidation. *See* I.C. § 35-45-2-1. Indeed, under the Intimidation statute, where a true threat involves "threat of force against a human being," I.C. § 35-31.5-2-138, the threat is chargeable as a Level 6 felony, *see* I.C. § 35-45-2-1(b)(1)(A). Moreover, the Intimidation statute specifically contemplates threatening messages posted "electronically, including on a social networking web site." I.C. § 35-45-2-1(c). It appears, then, that McGuire could have faced a charge of Level 6 felony Intimidation. Nevertheless, prosecutors have discretion to choose their charges, *see Hendrix v. State*, 759 N.E.2d 1045, 1047 (Ind. 2001)—and, for whatever reason, a decision was made to charge McGuire with a lesser misdemeanor offense.

# Article 1, Section 9

[13] Courts employ a two-step inquiry for challenges under Article 1, Section 9. "First, a reviewing court must determine whether state action has restricted a claimant's expressive activity. Second, if it has, the court must decide whether the restricted activity constituted an 'abuse' of the right to speak." *Whittington v. State*, 669 N.E.2d 1363, 1367 (Ind. 1996). As to the first part, the State has restricted McGuire's expression because she was prosecuted for Harassment based upon her online posts. *See id.* at 1370. As to the second part, the inquiry "hinges on whether the restricted expression constituted political speech." *Barnes v. State*, 946 N.E.2d 572, 577 (Ind. 2011), *adhered to on reh'g*, *superseded by statute on other grounds*. Speech is political "if its point is to comment on government action, whether applauding an old policy or proposing a new one, or . . . criticizing the conduct of an official acting under color of law." *Whittington*, 669 N.E.2d at 1370. If the expression was political speech, we apply a higher level of review. *Barnes*, 946 N.E.2d at 577. However, if the expression is ambiguous when viewed in context, we instead "evaluate the constitutionality of any state-imposed restriction of the expression under standard rationality review." *Whittington*, 669 N.E.2d at 1370. Under this lower level of review, we "determin[e] whether the state could reasonably have concluded that [the] expressive activity . . . was an 'abuse' of the right to speak or was, in other words, a threat to peace, safety, and well-being." *Id.* at 1371.

[14] "[W]here the defendant's speech was directed exclusively at state actors and focused exclusively on the actions or conduct of state actors, we have

repeatedly concluded that the speech is political." *Williams v. State*, 59 N.E.3d 287, 294 (Ind. Ct. App. 2016) (collecting cases). However, "even when coupled with political statements," speech is not necessarily unambiguously political. *Id.*; *see, e.g.*, *Anderson v. State*, 881 N.E.2d 86, 90 (Ind. Ct. App. 2008) (concluding speech directed toward police officers was not unambiguously political where the defendant "assert[ed] a right to be where he was," a statement that was "ambiguous as to whether [the defendant] was commenting on his own conduct or that of the officers").

[15]     Here, McGuire engaged in some political expression in that parts of the posts concerned tragic events arising from a traffic stop involving Officer Dodd. Yet, McGuire also said she was "coming for" law enforcement and was "on a rampage and ready to shoot to kill." Ex. 1. Moreover, McGuire repeatedly directed posts toward Officer Dodd and suggested that he commit suicide. We conclude, when viewed in context, the instant speech was not unambiguously political. This conclusion aligns with that of the trial court, which remarked that "there is a fine line between a [constitutional] right and harassment" and McGuire had "cross[ed] that line." Tr. Vol. II at 32. Because the speech was not unambiguously political, we apply standard rationality review. *See Whittington*, 669 N.E.2d at 1370. Upon such review, we conclude the State—in electing to prosecute McGuire—could have reasonably concluded that the speech posed a threat to peace, safety, and well-being. *See id.* at 1371. Thus, the speech could be regulated without running afoul of Article 1, Section 9. Moreover, because the speech was not unambiguously political and posed a

threat to safety, there is sufficient evidence McGuire lacked the intent to engage in "legitimate communication" with regard to the Indiana Constitution.

[16] We discern no failure of proof. The conviction concerned proscribable speech.

[17] Affirmed.

Riley, J., concurs.
Pyle, J., dissents with opinion.

| | |
|---|---|
| Constance J. McGuire, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellees-Plaintiff.* | Court of Appeals Case No. 18A-CR-2554 |

**Pyle, Judge, dissenting.**

[18] There is no question that McGuire's Facebook posts are distasteful, crude, and worrisome. However, I respectfully dissent from my colleagues' opinion affirming McGuire's conviction for class B misdemeanor harassment. This dissent does not condone the disturbing, crass statements made by McGuire about Officer Dodd. However, our primary duty is to uphold the principles enshrined in the Federal and State Constitutions.[5] When a statute falls short, this Court has a duty to reverse a conviction, even if it might leave a sour taste in one's mouth.

---

[5] Because I believe the harassment statute is unconstitutionally overbroad under the First and Fourteenth Amendments, I need not address any arguments raised under the Indiana Constitution.

[19]     My colleagues assert that there is sufficient evidence that McGuire had "no intent of legitimate communication." IND. CODE § 35-45-2-2(a). They also attempt to apply the "true threat" analysis to the facts of this case. However, I believe the State has fallen short of proving beyond a reasonable doubt that McGuire's intent to communicate was not legitimate or that they were "indecent" or "profane." I.C. § 35-45-2-2(a)(4)(B). In addition, the "true threat" analysis does not apply to this case because it applies to cases of intimidation, a statute which prohibits threats. Throughout this short bench trial, the State presented a case focused on proving that McGuire threatened Officer Dodd and that it was concerned that the "threats" might be carried out. While the concern may very well have been warranted, the State had a statute available to it designed to punish "true threats" against Officer Dodd. It could have charged McGuire with intimidation. I.C. § 35-45-2-1. Indiana's intimidation statute prohibits persons from communicating threats. In fact, it specifically defines eight separate types of threats that may be prosecuted. I.C. § 35-45-2-1(d)(1)-(8). Instead, the State chose to prosecute McGuire under Indiana's harassment statute; a statute that does not mention *anywhere* in its text the word "threat," and a statute that does not define the statutory elements concerning what is "legitimate communication," "indecent," or "profane words." I.C. § 35-45-2-2(a)(4)(B). Because the State charged McGuire with harassment, it was required to prove these elements beyond a reasonable doubt. In large part, the State failed because the harassment statute is unconstitutionally overbroad. As a result, the State presented insufficient evidence proving that McGuire's intent was not an effort at "legitimate

communication" or that her words were "indecent" or "profane" under the First Amendment. As written, Indiana's harassment statute's failure to limit itself to unprotected categories of speech allows constitutionally protected speech, even though offensive, to be criminally prosecuted.

[20] The First Amendment of our Constitution protects many forms of speech that are indecent and profane. "From 1791 to the present, . . . , our society, like other free but civilized societies, has permitted restrictions upon the content of speech in a few limited areas, which are 'of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.'" *R.A.V. v. City of St. Paul, Minn*, 505 U.S. 377, 383 (1992) (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942)). Examples of areas of speech which may be regulated are obscenity, *Miller v. California*, 413 U.S. 15 (1973), child pornography, *New York v. Ferber*, 458 U.S. 747 (1982), fighting words, *Chaplinsky*, 315 U.S. 568, defamation, *New York Times v. Sullivan*, 376 U.S. 254 (1964), and incitement to violence, *Brandenburg v. Ohio*, 395 U.S. 444 (1969). But, the Supreme Court has repeatedly indicated that statutes seeking to restrict speech within these categories may not be complete bans on that type of speech. *Gooding v. Wilson*, 405 U.S. 518, 521-522 (1972); *R.A.V.*, 505 U.S. at 384. Statutes must allow for such speech to be considered in their context. *Id*. In addition, these statutes must be carefully drawn or construed to punish only unprotected speech and not speech that is protected expression. *Id*.

[21] These principles were applied in *Gooding*, where a man named Johnny Wilson picketed a building located in Georgia and interfered with the recruitment of soldiers. When police officers sought to intervene, Wilson assaulted the officers. During the altercation, Wilson was heard to say to a police officer, "'White son of a bitch, I'll kill you' and 'you son of a bitch, I'll choke you to death.'" *Wilson v. State*, 223 Ga. 531, 156 S.E.2d 446, 534 (Ga. 1967), *reh'g denied, cert. denied*. In addition, Wilson stated, "'You son of a bitch, if you ever put your hands on me again, I'll cut you all to pieces.'" *Id*. He was subsequently arrested and charged with assault and battery, but, relevant to this case, he was also charged under a Georgia statute which read as follows:

> [a]ny person who shall, without provocation, use to or of another, and in his presence . . . opprobrious words or abusive language, tending to cause a breach of the peace . . . shall be guilty of a misdemeanor.

*Gooding*, 405 U.S. at 519. Wilson was convicted on all counts.

[22] After a series of appeals, the United States Supreme Court held that the Georgia statute was unconstitutionally overbroad and vague under the First and Fourteenth Amendments. Specifically, the Court noted that the First Amendment prohibits states from punishing the use of words or language that are not within narrowly limited classes of speech. Further, within the classes of speech that may be prohibited, the efforts at prohibition must be narrowly drawn. "In other words, the statute must be carefully drawn or be authoritatively construed to punish *only* unprotected speech and not be susceptible of application to protected expression. 'Because First Amendment

freedoms need breathing space to survive, government may regulate in the area with *narrow specificity*.'" *Id.* at 522 (quoting *NAACP v. Button*, 371 U.S. 415, 433 (1963) (emphasis added)).

[23] These principles were again applied two years later in *Lewis v. City of New Orleans*, 415 U.S. 130 (1974). In that case, a woman by the name of Mallie Lewis became involved in a dispute with a New Orleans police officer over the arrest of her son. Lewis was subsequently alleged to have yelled at the police officer, "[Y]ou god damn m.f. police – I am going to Giarrusso (the police superintendent) to see about this." Lewis, 415 U.S. at 138 (quoting Appellant's Br. 8). Lewis was arrested and charged under a city ordinance which read as follows:

> It shall be unlawful and a breach of the peace for any person wantonly to curse or revile or to use obscene or opprobrious language toward or with reference to any member of the city police while in the actual performance of his duty.

*Lewis*, 415 U.S. at 132. After a bench trial, Lewis was convicted, and she appealed.

[24] The Supreme Court found that, while the Louisiana Supreme Court had construed the ordinance as applying to "fighting words," the ordinance was susceptible of application to protected speech. *Id*. It found that the "fighting words" doctrine applies to words "'which by their very utterance inflict injury or tend to incite an immediate breach of peace, . . . .'" *Id.* (quoting *Chaplinsky*, 315 U.S. at 572). Specifically, the Supreme Court found that the word "opprobrious," which embraced words "conveying or intended to convey

disgrace," embraces words that do not fall within the fighting words doctrine. *Lewis*, 415 U.S. at 133. It did not matter that the words Lewis uttered "*might* have been constitutionally prohibited under a narrowly and precisely drawn statute." *Id.* (emphasis added). If the statute or ordinance, as authoritatively construed, is susceptible of application to protected speech, although vulgar and offensive, it is overbroad and facially invalid under the First and Fourteenth Amendments.

[25] In this case, I believe that Indiana's harassment statute is unconstitutionally overbroad and facially invalid because it is susceptible of prohibiting protected expression. Here, the State alleged in its charging information that McGuire, without any intent of *legitimate communication*, intended to harass, annoy, or alarm Officer Dodd by posting "an obscene message or *indecent* or *profane* words to Jeramie Dodd, . . . ." (App. Vol. II, pg. 7) (emphasis added). Except for obscenity,[6] Indiana's harassment statute fails to narrowly define the terms "legitimate communication," "indecent," or "profane words" in a way that does not include constitutionally protected speech. I.C. § 35-45-2-2(a)(4)(B). Concerning the word "indecent," another panel of this Court, which was

---

[6] Under Indiana's Harassment statute, a message is obscene if:

    (1)  the average person, applying contemporary community standards, finds that the dominant theme of the message, taken as a whole, appeals to the prurient interest in sex;

    (2)  the message refers to sexual conduct in a patently offensive way; and

    (3)  the message, taken as a whole, lacks serious artistic, literary, political, or scientific value.

IND. CODE § 35-45-2-2(b).

construing the meaning of "indecent" within the context of the now repealed indecent telephone call statute, determined that it "refers to nonconformance with accepted standards of morality." *Hott v. State*, 400 N.E.2d 206, 208 (Ind. Ct. App. 1980) (offending communication made was via a telephone call to the chief of police at his home at 11:00 p.m.). However, McGuire was not charged under the telephone call portion of the harassment statute.[7] Moreover, citing *Federal Communications Commission v. Pacifica Foundation*, 438 U.S. 726 (1978), the Hott Court noted as follows:

> The Pacifica Foundation court, . . . , made a further distinction that whether a communication is protected under the First Amendment depends also upon where and how it is made. It noted that governmental entities may constitutionally act to prohibit unwanted intrusions into the privacy of the home of unwelcome views and ideas, which include harassing *telephone calls*, and the use of obscene or profane language on the *telephone*, the natural consequence of which is to abuse the hearer. Such conduct, *while it may be protected elsewhere*, will not be protected where there is a *showing* that substantial privacy interests are being invaded.

*Hott*, 400 N.E.2d at 208 (emphasis added). In other words, a message communicated into a person's home may be considered "indecent" partly because it is transmitted into the privacy of one's home. A situation that did not

---

[7] To the extent that *Kinney v. State*, 404 N.E.2d 49 (Ind. Ct. App. 1980) might be cited as holding that Indiana's harassment statute is not unconstitutionally overbroad, I would respectfully disagree. In that case, Kinney argued that the statute was unconstitutionally vague, not overbroad. *Id.* at 50. These are separate and distinct constitutional doctrines. Even if this were not so, *Kinney* would not be applicable to this case because the subsection under which McGuire was charged did not exist at the time that case was handed down. In 1996, our General Assembly amended the statute to include speech communicated over a computer network. 1996 Ind. Legis. Serv. P.L. 216-1996 (H.E.A. 1005) (West).

occur here. I am not aware of any other Indiana cases that define the statutory terms in the computer network subsection.

[26] In this case, McGuire's conviction runs afoul of the Constitution because the statute is overbroad; its lack of definition allows protected speech to be prosecuted. In addition, the State presented no evidence that McGuire's speech fit within a category which permits restriction by the government. The State's case consisted of two witnesses. The first was Joreda Maddox. She viewed McGuire's posts on Facebook and reported them to the Kokomo Police Department because she was concerned about the *threats* that had been made. (Tr. 7). The second witness was Officer Dodd. He testified that he believed McGuire's anger stemmed from the death of her son, who had consumed methamphetamine during a traffic stop at which Officer Dodd was present. (Tr. 10). Since that time, Officer Dodd testified he has been "plagued with *threats* and other incidents from Mrs. McGuire." (Tr. 10) (emphasis added). McGuire, representing herself, presented the testimony of Ted Driver who stated that McGuire had pursued a wrongful death claim. McGuire also testified that she believed her Facebook posts were set to private and were only related to the death of her son. (Tr. 21-22, 24-27). None of this evidence fits into a category of unprotected speech.

[27] It is clear from the record that the State sought to prosecute McGuire because it was worried about whether her Facebook posts naming Officer Dodd would result in violence. While the State's concern was warranted, we must still follow the law concerning First Amendment rights. It is well settled that "the

constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or law violation except where such advocacy is directed to inciting or producing *imminent lawless action and is likely to incite or produce such action.*"  *Brandenburg*, 395 U.S. at 447 (emphasis added).  There was simply no evidence introduced at trial that McGuire's Facebook posts were directed at producing imminent lawless action and that it was *likely to occur*.

[28]  In addition, the text of the statute makes no attempt to carefully limit its reach to speech calling for imminent lawless action.  As for any other category of restricted speech, the State offered no evidence that the Facebook posts were obscene (as defined by the statute and *Miller*, 413 U.S. 15), child pornography (*Ferber*, 458 U.S. 747), fighting words (*Chaplinsky*, 315 U.S. 568), or defamation (*New York Times*, 376 U.S. 254).  One might attempt to argue that the Facebook posts fit within the definition of "indecent" (as not conforming with accepted standards of morality) as construed by *Hott*, 400 N.E.2d at 208.  However, *Hott* is easily distinguished because McGuire's speech was communicated via the internet through a Facebook post and not a telephone call specifically directed to Officer Dodd at his home.  *Id*.

[29]  My colleagues cite to *Virginia v. Black*, 538 U.S. 343 (2003) and *Brewington v. State*, 7 N.E.3d 946 (Ind. 2014) for the proposition that "true threats" may be prohibited.  While this category of speech may be prohibited, the "true threat" analysis simply does not apply to this case and the State did not present sufficient evidence of McGuire's intent.  As Justice O'Connor stated in *Black*,

"*Intimidation* in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a *threat* to a person or group of persons *with the intent* of placing the victim in fear of bodily harm or death." *Id*. at 360 (emphasis added). If my colleagues believe that McGuire's comments were a "true threat," then they must acknowledge that the State's concern was the intimidating nature of McGuire's Facebook posts; in other words, the likelihood that she or someone else would carry out those threats. *See Brandenburg*, 395 U.S. at 447 (requiring proof that the threat of imminent lawless action was also likely to occur). Yet, the State's decision to charge McGuire with harassment and *not* under Indiana's intimidation statute is extremely telling about its own belief in the lack of evidence surrounding McGuire's intent. In addition, *Black* is factually and legally distinguishable from this case. *Black* dealt with expressive conduct, not speech. It was a consolidated case addressing whether, consistent with the First Amendment, a state could prohibit cross burning; the Court held that the State of Virginia could ban cross burning carried out with the *intent to intimidate*. There are very few images in America soaked with an intent to terrorize and intimidate as the Ku Klux Klan's burning cross. As a result, there was no question of the defendants' intent to intimidate in those cases. However, despite their reprehensible conduct, none of the three defendants in *Black* were prosecuted for their clearly threatening comments. *Id*. at 349 (e.g. ". . . he would love to take a .30/.30 and just random[ly] shoot the blacks."). In this case, McGuire was not prosecuted for her conduct, but for her speech. Speech, which under

the harassment statute, was not considered threatening or intimidating, but was indecent or profane.

[30] The distinction between a charge of intimidation[8] (where there must be proof of a person's *threat* with intent to place another person in fear of coerced conduct, retaliation, or that the threat will be carried out) and harassment (where there is only required proof of a person's intent to harass, annoy, or alarm another person but with no intent of legitimate communication) is very important. Indiana's intimidation statute clearly defines what constitutes a "threat." I.C. § 35-45-2-1(d). Each of the definitions in the intimidation statute defines words or actions that are outside of the protection provided by the First Amendment. This is why the "true threat" analysis in *Black* and *Brewington* applies to persons charged with intimidation, not harassment. The text of Indiana's harassment statute does *not* address any "threat" communicated to another person; the word simply does not appear anywhere in the statute. Indeed, the statute's infirmity lies in its lack of definition. The definition of what is considered "legitimate communication" is critical. If "legitimate communication" is protected speech, then the statute fails to narrowly define (and we have not adequately construed) the terms "indecent" and "profane words" in such a way so as to prohibit only unprotected speech.

---

[8] IND. CODE § 35-45-2-1.

Because I believe IND. CODE § 35-45-2-2(a)(4)(B) is unconstitutionally overbroad and no evidence was introduced showing McGuire's Facebook posts fit within an unprotected category, I respectfully dissent from my colleagues' opinion affirming McGuire's conviction for harassment as a class B misdemeanor.